UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK BIEDERMAN, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>FCA US LLC, et al.,<br><br>　　　　Defendants.<br>―――――――――――――――――――<br>BRIAN HOCKER, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>FCA US LLC, et al.,<br><br>　　　　Defendants. | Case No.  3:23-cv-06640-JSC<br>　　　　　　3:24-cv-00611-JSC<br><br>**ORDER RE: MOTIONS TO TRANSFER**<br><br>Dkt. Nos. 44, 21 |

In these related actions, seven California residents who purchased vehicles from authorized FCA dealerships in California bring federal RICO and California state law claims on behalf of a putative class. Defendants move to transfer the actions to the District Court for the Eastern District of Michigan under 28 U.S.C. § 1404(a). (No. 23-6640, Dkt. No. 44; No. 24-611, Dkt. No. 21.[1]) Having considered the parties' briefs and having had the benefit of oral argument on May 30, 2024, the Court DENIES the motions to transfer.

//

//

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

**BACKGROUND**

The gravamen of Plaintiffs' claims is that FCA US, a motor vehicle manufacturer sometimes referred to as Chrysler, and Cummins, the manufacturer of the diesel engines for the subject vehicles, designed, manufactured, and sold 2013-2023 Ram 2500 and 3500 diesel trucks with emission control devices that interfere with the trucks' emission control systems. (No. 23-6640, Dkt. No. 1 at ¶¶ 2, 13, 17.) These so-called "defeat devices" were designed to allow the trucks to evade California's strict emissions standards. (*Id*. at ¶¶ 3, 42.) These lawsuits follow a December 21, 2023 announcement by Attorney General Merrick Garland that the Justice Department had reached an agreement with Cummins "to settle claims that, over the past decade, the company unlawfully altered hundreds of thousands of engines to bypass emissions tests in violation of the Clean Air Act. As part of the agreement, the Justice Department will require Cummins to pay $1.675 billion, the largest civil penalty we have ever secured under the Clean Air Act, and the second largest environmental penalty ever secured." (*Id*. at ¶ 4.)

The *Biederman* action was filed four days after this announcement and the *Hocker* action a little over a month later. *See* Case Nos. 23-cv-6640, 24cv--611. In both actions, Plaintiffs bring claims on behalf of a nationwide class under the federal RICO statute, and on behalf of a California class under several California laws, including the UCL, Consumer Legal Remedies Act, False Advertising Law, breach of express and implied warranties under the Song-Beverly Act and California Commercial Code, and breach of express California Emissions Warranty. (No. 23-6640, Dkt. No. 1 at ¶¶ 19-41; No. 24-611, Dkt. No. 1 at ¶¶ 19-45.) The Court granted Plaintiffs' unopposed motion to relate the actions and the underlying motions to transfer followed. The motions to transfer are identical and Plaintiffs filed a combined opposition.

**DISCUSSION**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C.A. § 1404(a). Section 1404(a) exists to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S.

612, 616 (1964) (cleaned up). District courts decide motions for section 1404(a) transfer based on an individualized, case-by-case consideration of convenience and fairness. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). Defendants, as the movants, bear the burden to demonstrate jurisdiction and proper venue would exist in the Eastern District of Michigan and that the balance of factors favors transfer. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

### A. Jurisdiction and Venue in the Eastern District of Michigan

"[T]he power of a District Court under § 1404(a) to transfer an action to another district is made to depend not upon the wish or waiver of the defendant but, rather, upon whether the transferee district was one in which the action 'might have been brought' by the plaintiff." *Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960). Because venue and jurisdiction are proper in the Eastern District of Michigan, Plaintiffs could have filed this action in that District.

First, there is no dispute the Eastern District of Michigan could exercise personal jurisdiction over Defendants. FCA US is headquartered in Michigan and subject to general personal jurisdiction there. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Cummins concedes it is subject to specific personal jurisdiction for claims arising out of its relationship with FCA US in Michigan. (No. 23-6640, Dkt. No. 44-1 at 14.)

Second, venue is proper in the Eastern District of Michigan because venue is proper in a "judicial district in which a substantial part of events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C § 1391(b)(2). Plaintiffs' claims are based in part on allegations of federal emissions testing in Michigan and alleged omissions from marketing and other representations that originated from Michigan, where FCA US is headquartered.

### B. Section 1404(a) Factors

In deciding whether transfer is warranted, the Court may consider:

> (1) plaintiffs' choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time to trial in

3

each forum.
*Jones*, 211 F.3d at 498-99.

### 1. Plaintiffs' Choice of Forum

Generally, there is "a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). However, courts give less deference to a plaintiff's choice of forum when "the plaintiff does not reside in the venue or where the forum lacks a significant connection to the activities alleged in the complaint." *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001). "[I]n determining the appropriate amount of deference to accord plaintiff's choice of forum, courts consider the extent of the parties' contacts with the chosen forum, including contacts relating to the plaintiff's cause of action." *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1041 (N.D. Cal. 2020) (citing *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).) Thus, "a plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum." *Piper Aircraft*, 454 U.S. at 255 (citing *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)).

All the named Plaintiffs reside in California, including the majority in this District, and all purchased the at-issue vehicles in California. (No. 23-6640, Dkt. No. 1 at ¶¶ 9-11, 24; No. 24-611, Dkt. No. 1 at ¶¶ 55-74.) Further, all but one of Plaintiffs' claims arise under California law and Plaintiffs insist California's stringent emissions standards demonstrate a particular interest in the subject matter of their claims. (No. 23-6640, Dkt. No. 54 at 11.) It is only when "the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [that the plaintiff's] choice is entitled to only minimal consideration." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). Neither circumstance is present here.

That these actions are putative class actions does not weigh against Plaintiffs' choice of forum given both cases assert California classes along with a nationwide class, and again, all but one of Plaintiffs' claims arise under California law and all named Plaintiffs are California residents. Plaintiffs' choice of forum here is not "not purely fortuitous." *Sonoda v. Amerisave Mortg. Corp.*, No. C-11-1803 EMC, 2011 WL 2653565, at *4 (N.D. Cal. July 6, 2011) (collecting

cases finding the plaintiff's choice of forum entitled to deference notwithstanding putative class claims).

Accordingly, this factor weighs against transfer.

### 2. Convenience of the Parties and the Witnesses

Defendants insist Michigan is more convenient because it is where FCA US is located and is much closer for Cummins, which is headquartered in Columbus, Indiana. Defendants also maintain because the cases are putative class actions, there are likely many more defense witnesses than named Plaintiffs. However, the "[c]onvenience of a litigant's employee witnesses is entitled to little weight because they can be compelled by their employers to testify regardless of venue." *Brown v. Abercrombie & Fitch Co.*, No. 4:13-CV-05205 YGR, 2014 WL 715082, at *4 (N.D. Cal. Feb. 14, 2014).

To evaluate this factor, "courts must consider not only the number of witnesses, but also the nature and quality of their testimony." *United States ex rel. Tutanes-Luster v. Broker Sols.*, Inc., No. 17-CV-04384-JST, 2019 WL 1024962, at *6 (N.D. Cal. Mar. 4, 2019). When "establishing inconvenience to witnesses, the moving party must name the witnesses, state their location, and explain their testimony and its relevance." *Hendricks v. StarKist Co.*, No. 13-CV-729 YGR, 2014 WL 1245880, at *3 (N.D. Cal. Mar. 25, 2014) (quoting *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1193 (S.D. Cal. 2007)).

Defendants have made no such showing here. They did not identify a single non-party witness and instead contend "it is too soon to anticipate where nonparty witnesses will be located." (No. 23-6640, Dkt. No. 44-1 at 20.) This non-identification is insufficient to meet their burden. *See Woolfson v. Conn Appliances, Inc.*, No. 21-CV-07833-MMC, 2022 WL 3139522, at *7 (N.D. Cal. Aug. 5, 2022).

Accordingly, this factor weighs against transfer.

### 3. Ease of Access to the Evidence

Defendants concede the ease of access to electronic records reduces the significance of this factor but nonetheless insist "most testamentary evidence will come from witnesses without easy access to the Northern District of California." (No. 23-6640, Dkt. No. 44-1 at 21.) This argument

5

is essentially a reprise of the preceding argument and is no more persuasive in this context. Further, Plaintiffs argue Defendants will likely demand inspections of the subject vehicles, all of which are located in California, and are thus more easily accessed in this District. Finally, to the extent the California Air Resources Board, California's emissions regulator, is likely to have discoverable information, while it is not located in this District, it is far more convenient to this District than to the Eastern District of Michigan.

### 4. Familiarity with the Applicable Law

Aside from the single RICO claim in each case, the remaining 16 combined claims are brought under California law, and this Court is necessarily more familiar with California state laws than the District Court for the Eastern District of Michigan. Defendants' insistence the Eastern District of Michigan is more familiar with "the application of consumer protection law to the intricate details of motor vehicle emissions considering EPA's associated regulatory scheme" is unpersuasive. (Dkt. No. 44-1 at 22.) The Northern District of California is no stranger to automotive emission defect litigation. *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 349 F. Supp. 3d 881 (N.D. Cal. 2018); *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*, 295 F. Supp. 3d 927 (N.D. Cal. 2018).

Accordingly, this factor is at best neutral.

### 5. Local Interest in the Controversy

Defendants do not dispute California has an interest in this action. Nor could it. In 2023, the State of California and the California Air Resource Board, like the Department of Justice on behalf of the Environmental Protection Agency, reached separate agreements with Cummins to settle claims that the company had altered engines to bypass emission tests in violation of the Clean Air Act whereby Cummins agreed to pay millions in civil penalties. (Dkt. No. 23-6640, Dkt. No. 54 at 8 (citing *California v. Cummins, Inc.*, No. 1:24-cv-00090 (D. D.C.); *United States v. Cummins Inc.*, No.1:24-cv-00088 (D. D.C.).) So, California has evidenced a strong interest in the very fraud alleged here.  To be sure, Michigan likewise has an interest in the controversy given FCA is headquartered there and the misrepresentations underlying Plaintiffs claims began there and were then allegedly disseminated nationally.

Given both forums' interest in the controversy, this factor is neutral.

### 6. Court Congestion and Time to Trial

While the volume of cases in this District is considerably higher than that in the Eastern District of Michigan, the average time to disposition is about the same. (Dkt. No. 54 at 23 (reflecting the average time to disposition was 6.9 months in this District and 7.8 months in the Eastern District of Michigan and the median time from filing to trial was 48.9 months in this District and 50.9 months in Eastern District of Michigan).) This factor thus does not support transfer.

### 7. Interests of Justice

Finally, Defendants insist transfer is warranted in the interest of justice because Plaintiffs' venue choice was motivated by forum shopping; that is, their desire to avoid the "defendant-friendly law" in the Eastern District of Michigan and the Sixth Circuit Court of Appeals preemption decision in *In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Pracs. Litig*., 65 F.4th 851 (6th Cir. 2023)). (Dkt. No. 57 at 7.) They emphasize that in 2016 some of the plaintiffs' counsel in these actions filed a putative nationwide class action lawsuit, including a California subclass, against FCA US and Cummins in the Eastern District of Michigan in connection with the model year 2008 to 2012 2500/3500 RAM trucks, alleging, as they do here, consumer protection claims based on a failure to disclose alleged defeat devices. *See Bledsoe v. FCA US LLC,* No. 4:16-cv-14024 (E.D. Mich.). And the following year the same counsel filed similar actions arising from model year 2013 to 2017 RAM trucks. *See Raymo v. FCA US LLC,* No. 2:17-cv-12168 (E.D. Mich.). So, argues Defendants, to discourage such forum shopping, the Court should transfer to Michigan.

The Court is not swayed. This action involves California plaintiffs bringing California claims arising out of advertisements they viewed in California about vehicles they purchased in California; so, filing in California was appropriate. That *some* of Plaintiff's counsel in this action previously filed actions in Michigan on behalf of *different* plaintiffs challenging Defendants' alleged misrepresentations regarding diesel trucks manufactured for the most part in *different* years than the trucks at issue here does not suggest Plaintiffs should have filed in Michigan.

7

Defendants' reliance on *Meza v. Procter & Gamble Co.*, No. 23-CV91 JGB SHKx, 2023 WL 3267861, at *4 (C.D. Cal. Apr. 27, 2023), is unpersuasive. The *Meza* court's description of the forum shopping in that action highlights its non-applicability to the circumstances here.

> Plaintiff's Counsel filed a virtually identical action to this one in December 2021 in the Southern District of New York, *Clay*. After Defendant filed a motion to dismiss asserting a preemption argument discussed above, the parties awaited Judge Cronan's decision. Meanwhile, Judge Liman held in a substantially similar non-drowsy product action filed by Plaintiff's Counsel (but against a different defendant), that claims were preempted on the same theory as that raised by Defendant in *Clay*. The next business day, Plaintiff's Counsel voluntarily dismissed *Clay* without public explanation, raising the strong inference it was seeking to avoid the same result. A few months later, Plaintiff's Counsel found a new client and refiled a copycat action in this District. And why did the firm choose the Central District of California? *Lemus*, 613 F. Supp. 3d 1269 provided a strong reason, because Judge Carter had declined to dismiss another substantially similar case brought by Plaintiff's Counsel when presented with the same preemption argument. *See id*. at 1276.

*Id* at *4. These actions, unlike *Meza*, are not "copy-cat" actions filed shortly after the voluntary dismissal of other actions; they are new actions filed *years* after the Michigan actions, involving for the most part different vehicles and conduct, and arising from a DOJ settlement announced less than six months ago and years after the earlier actions. The interests of justice do not warrant transfer to Defendants' preferred forum in these circumstances.

.***

Considering the totality of the relevant factors, Defendants have not met their burden of showing the interests of justice and convenience factors on balance weigh in favor of transferring this action to the Eastern District of Michigan. So, the actions will remain in Plaintiffs' chosen forum.

//
//
//
//
//
//

8

**CONCLUSION**

For the reasons explained above and at oral argument on May 30, 2024, the Court DENIES Defendants' motion to transfer this case to the Eastern District of Michigan.

This Order disposes of Dkt. No. 44 in No. 23-6640 and Dkt. No. 22 in No. 24-611.

**IT IS SO ORDERED.**

Dated: June 3, 2024

_____
JACQUELINE SCOTT CORLEY
United States District Judge

9