1  David Stellings
   LIEFF CABRASER HEIMANN &
2  BERNSTEIN, LLP
   250 Hudson Street, 8th Floor
3  New York, NY 10013-1413
   Telephone: 212.355.9500
4  dstellings@lchb.com

5  Roland Tellis (SBN 186269)
   BARON & BUDD P.C.
6  15910 Ventura Boulevard, Suite 1600
   Encino, CA 91436
7  Telephone: 818.839.2333
   rtellis@baronbudd.com

8

9  *Counsel for Plaintiffs*

10 [Additional counsel listed on signature page]

James E. Cecchi (*pro hac vice*)
CARELLA, BYRNE, CECCHI, BRODY &
AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 994-1700
jcecchi@carellabyrne.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com
garthw@hbsslaw.com

11

12                    UNITED STATES DISTRICT COURT

13                   NORTHERN DISTRICT OF CALIFORNIA

14 FRANK BIEDERMAN, et al.,
   on behalf of themselves and all others
15 similarly situated,

16        Plaintiffs,

17 v.

18 FCA US LLC, a Delaware corporation, and
   CUMMINS INC., an Indiana corporation,
19
20        Defendants.

Case No. 23-cv-06640-JSC

**PLAINTIFFS' OPPOSITION TO DEFENDANT FCA US LLC'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

Hon. Jacqueline Scott Corley
Hearing Date: January 16, 2025
Time: 10:00 a.m.
Courtroom: 8

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION, FACTUAL BACKGROUND, AND LEGAL STANDARD ............ 1

II.    ARGUMENT ...................................................................................................... 2

    A.    Neither the CAA nor the EPCA preempt Plaintiffs' misrepresentation claims. ......................................................................................................... 2

        1.    The EPCA has nothing to do with this case. ............................... 2

        2.    Express preemption does not apply ............................................ 2

        3.    Congress has not occupied the field of protecting consumers against unfair and deceptive practices. ...................................... 4

        4.    Plaintiffs' claims do not conflict with the CAA. ....................... 5

    B.    Plaintiffs' nationwide fraudulent concealment claim is well-pled (Count II) ......... 7

        1.    Plaintiffs have standing under Rule 12(b)(1). ............................ 7

        2.    Dismissal under 12(b)(6) for failure to specify which state(s)'s law(s) apply is not warranted. ................................................. 7

    C.    Plaintiffs' fraud claims satisfy Rule 9(b) (Counts III, IV, X, and XI). .................. 8

        1.    Plaintiffs adequately plead FCA's misrepresentations. ............. 8

        2.    Plaintiffs' misrepresentation claims are not based on puffery. ................. 10

        3.    Plaintiffs adequately plead FCA's omissions. .......................... 13

        4.    Plaintiffs adequately plead FCA's duty to disclose. ................. 14

        5.    Plaintiffs adequately allege FCA's pre-sale knowledge of the defect. ....................................................................................... 16

        6.    Statute-specific arguments ......................................................... 18

    D.    The express warranty claims are cognizable (Counts V, VI, and IX). .................. 20

        1.    Plaintiffs adequately allege the warranty terms. ...................... 20

        2.    Reliance is not an element of warranty claims. ........................ 21

        3.    There is no further fix available, so presentment is futile. ....... 22

        4.    There is no notice requirement in express warranty claims. ..... 22

    E.    The implied warranty claims are also well-pled (Counts VII and VIII). ............. 23

        1.    Plaintiffs advance a viable theory of unmerchantability. .......... 23

        2.    There is no privity requirement for the implied warranty claims. ........... 24

        3.    There is no notice requirement either ....................................... 24

    F.    Unjust enrichment is a viable claim pled in the alternative (Count XI). ............... 25

CONCLUSION ............................................................................................................. 25

1

# TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4

*Aaronson v. Vital Pharms., Inc.*,
   2010 WL 625337 (S.D. Cal. Feb. 17, 2010) ........................ 25

5

*Acedo v. DMAX, Ltd.*,
   2015 WL 12912365 (C.D. Cal. July 31, 2015) ...................... 22

6

7

*Alvarez v. Chevron Corp.*,
   656 F.3d 925 (9th Cir. 2011) ....................................... 25

8

*Amavizca v. Nutra Mfg., LLC*,
   2021 WL 682113 (C.D. Cal. Jan. 27, 2021) ........................... 8

9

*In re Apple In-App Purchase Litig.*,
   855 F. Supp. 2d 1030 (N.D. Cal. 2012) .............................. 18

10

11

*Arakelian v. Mercedes-Benz USA, LLC*,
   2018 WL 6422649 (C.D. Cal. June 4, 2018) ...................... 22, 23

12

*Backhaut v. Apple, Inc.*,
   74 F. Supp. 3d 1033 (N.D. Cal. 2014) ............................... 10

13

14

*Baggett v. Hewlett-Packard Co.*,
   582 F. Supp. 2d 1261 (C.D. Cal. 2007) ............................. 14

15

*Becerra v. Gen. Motors LLC*,
   241 F. Supp. 3d 1094 (S.D. Cal. 2017) ............................. 21

16

*Belyea v. GreenSky, Inc.*,
   2023 WL 8701311 (N.D. Cal. Dec. 15, 2023) ....................... 20

17

18

*Benipayo v. Volkswagen Grp. of Am., Inc.*,
   2020 WL 553884 (N.D. Cal. Feb. 4, 2020) ......................... 23

19

*Benkle v. Ford Motor Co.*,
   2017 WL 9486154 (C.D. Cal. Dec. 22, 2017) ....................... 22

20

21

*Bledsoe v. FCA US LLC*,
   2024 WL 445334 (E.D. Mich. Jan. 26, 2024) ........................ 4

22

*Bruton v. Gerber Prods. Co.*,
   703 F. App'x. 468 (9th Cir. 2017) ................................. 25

23

*Bruton v. Gerber Prods. Co.*,
   961 F. Supp. 2d 1062 (N.D. Cal. 2013) ............................. 10

24

25

*Burr v. Sherwin Williams Co.*,
   42 Cal. 2d 682 (1954) ............................................. 21

26

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
   637 F.3d 1047 (9th Cir. 2011) ...................................... 8

27

28

*Cal. Pharmacy Mgmt., LLC v. Zenith Ins. Co.*,
   669 F. Supp. 2d 1152 (C.D. Cal. 2009) .............................. 9

# TABLE OF AUTHORITIES
## (continued)

Page

*In re Carrier IQ, Inc.*,
   78 F. Supp. 3d 1051 (N.D. Cal. 2015) ................................................................... 24

*In re Caterpillar, Inc., C13 & C15 Engine Prods. Liab. Litig.*,
   2015 WL 4591236 (D.N.J. July 29, 2015) ............................................................... 5

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ............................................................................................ 18

*Chae v. SLM. Corp.*,
   593 F.3d 936 (9th Cir. 2010) .................................................................................... 4

*Chapman v. Skype, Inc.*,
   220 Cal. App. 4th 217 (2013) .................................................................................. 10

*Cho v. Hyundai Motor Co., Ltd.*,
   636 F. Supp. 3d 1149 (C.D. Cal. 2022) ................................................................... 21

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*,
   295 F. Supp. 3d 927 (N.D. Cal. 2018) ............................................................. *passim*

*Cimoli v. Alacer Corp.*,
   546 F. Supp. 3d 897 (N.D. Cal. 2021) ...................................................................... 8

*Clemens v. DaimlerChrysler Corp.*,
   534 F.3d 1017 (9th Cir. 2008) ................................................................................. 24

*Coelho v. Hyundai Motor Am.*,
   2023 WL 3763812 (N.D. Cal. May 31, 2023) ........................................................ 21

*Coleman v. Boston Sci. Corp.*,
   2011 WL 381317 (E.D. Cal. Aug. 29, 2011) .......................................................... 21

*Collins v. Gamestop Corp.*,
   2010 WL 3077671 (N.D. Cal. Aug. 6, 2010) ........................................................... 8

*Cooper v. Pickett*,
   137 F.3d 616 (9th Cir. 1997) ................................................................................... 10

*Corbett v. PharmaCare U.S., Inc.*,
   567 F. Supp. 3d 1172 (S.D. Cal. 2021) .................................................................... 8

*Counts v. General Motors, LLC*,
   681 F. Supp. 3d 778 (E.D. Mich. 2023) ............................................................... 3, 4

*Cunningham v. Ford Motor Co.*,
   2015 WL 13764982 (S.D. Cal. Dec. 7, 2015) ........................................................ 23

*Daniel v. Ford Motor Co.*,
   806 F.3d 1217 (9th Cir. 2015) ................................................................................. 14

*DePhillippis v. Living Essentials, LLC*,
   2018 WL 7051065 (S.D. Cal. Nov. 29, 2018) ........................................................ 10

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

*Doyle v. Chrysler Grp. LLC*,
    2014 WL 1910628 (C.D. Cal. Jan. 29, 2014) ........................................................ 16

4

*In re Duramax Diesel Litig.*,
    681 F. Supp. 3d 767 (E.D. Mich. July 12, 2023) ............................................... 3, 4

5

*ESG Cap. Partners, LP v. Stratos*,
    828 F.3d 1023 (9th Cir. 2016).............................................................................. 25

6

7

*Fenner v. Gen. Motors, LLC*,
    113 F.4th 585 (6th Cir. 2024)................................................................................. 4

8

*Finney v. Ford Motor Co.*,
    2018 WL 2552266 (N.D. Cal. June 4, 2018) ........................................................ 15

9

10

*In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Pracs.
    Litig.*,
    65 F.4th 851 (6th Cir. 2023)............................................................................... 2, 4

11

12

*Gatling-Lee v. Del Monte Foods, Inc.*,
    2023 WL 11113888 (N.D. Cal. Mar. 28, 2023)...................................................... 7

13

*Gertz v. Toyota Motor Corp.*,
    2011 WL 3681647 (C.D. Cal. Aug. 22, 2011) ...................................................... 22

14

15

*Graham v. Cent. Garden & Pet Co.*,
    2023 WL 2744391 (N.D. Cal. Mar. 30, 2023) ................................................ 12, 13

16

*Greenman v. Yuba Power Prods., Inc.*,
    59 Cal. 2d 57 (1963) ...................................................................................... 24, 25

17

*Hadley v. Kellogg Sales Co.*,
    273 F. Supp. 3d 1052 (N.D. Cal. 2017) ................................................................ 11

18

19

*Hammerling v. Google LLC*,
    615 F. Supp. 3d 1069 (N.D. Cal. 2022) ................................................................ 16

20

*Hardt v. Chrysler Grp. LLC*,
    2015 WL 12683963 (C.D. Cal. Mar. 16, 2015) ............................................... 14, 21

21

22

*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*,
    61 Cal. 4th 988 (2015) ......................................................................................... 25

23

*Hastings v. Ford Motor Co.*,
    495 F. Supp. 3d 919 (S.D. Cal. 2020) .................................................................. 21

24

25

*Hinjos v. Kohl's Corp.*,
    718 F.3d 1098 (9th Cir. 2013)............................................................................... 15

26

*Hodsdon v. Mars, Inc.*,
    891 F.3d 857 (9th Cir. 2018) ................................................................................ 15

27

*Hollins v. Walmart Inc.*,
    67 F.4th 1011 (9th Cir. 2023).................................................................................. 2

28

1

2

**TABLE OF AUTHORITIES**
(continued)

Page

3

*Hrapoff v. Hisamitsu Am., Inc.*,
   2022 WL 2168076 (N.D. Cal. June 16, 2022) .......................................................... 7

4

*Infanzon v. Allstate Ins. Co.*,
   2020 WL 3891671 (C.D. Cal. Apr. 14, 2020) ........................................................ 20

5

6

*Johnson v. Nissan N. Am., Inc.*,
   2018 WL 905850 (N.D. Cal. Feb. 15, 2018)........................................................... 22

7

*Johnson v. Trumpet Behav. Health, LLC*,
   2022 WL 74163 (N.D. Cal. Jan. 7, 2022) .............................................................. 20

8

9

*Kargar v. BMW of N. Am. LLC*,
   2024 WL 3915218 (C.D. Cal. Aug. 6, 2024).......................................................... 21

10

*Keegan v. Am. Honda Motor Co.*,
   838 F. Supp. 2d 929 (C.D. Cal. 2012).................................................................... 24

11

*Knowles v. ARRIS Int'l PLC*,
   847 F. App'x 512 (9th Cir. 2021) .......................................................................... 16

12

13

*Lomeli v. Jackson Hewitt, Inc.*,
   2018 WL 1010268 (C.D. Cal. Feb. 20, 2018)......................................................... 25

14

*Luong v. Subaru of Am., Inc.*,
   2018 WL 2047646 (N.D. Cal. May 2, 2018) .......................................................... 24

15

16

*MacDougall v. Am. Honda Motor Co., Inc.*,
   2023 WL 9687349 (C.D. Cal. Oct. 3, 2023)........................................................... 23

17

*Marek v. Molson Coors Beverage Co.*,
   580 F. Supp. 3d 848 (N.D. Cal. 2022) ................................................................... 25

18

19

*Mason v. Nature's Innovation, Inc.*,
   2013 WL 1969957 (S.D. Cal. May 13, 2013) ........................................................ 24

20

*McClellan v. I-Flow Corp.*,
   776 F.3d 1035 (9th Cir. 2015)................................................................................. 6

21

*Melendres v. Arpaio*,
   784 F.3d 1254 (9th Cir. 2015).................................................................................. 7

22

23

*Michael v. Honest Co., Inc.*,
   2016 WL 8902574 (C.D. Cal. Dec. 6, 2016) ........................................................... 9

24

*Minkler v. Apple, Inc.*,
   65 F. Supp. 3d 810 (N.D. Cal. 2014) ..................................................................... 25

25

26

*Monet v. Chase Home Fin., LLC*,
   2010 WL 2486376 (N.D. Cal. June 16, 2010) ....................................................... 25

27

*Montalvo v. Spirit Airlines*,
   508 F.3d 464 (9th Cir. 2007).................................................................................... 3

28

– v –

1

2

**TABLE OF AUTHORITIES**
(continued)

**Page**

3

*Moore v. Kayport Package Exp., Inc.*,
   885 F.2d 531 (9th Cir. 1989)..................................................................... 17

4

*Morales v. Unilever U.S., Inc.*,
   2014 WL 1389613 (E.D. Cal. Apr. 9, 2014)................................................ 10

5

6

*Mosher-Clark v. Gravity Defyer Med. Tech. Corp.*,
   691 F. Supp. 3d 1113 (N.D. Cal. 2023) ..................................................... 21

7

*Mosqueda v. Am. Honda Motor Co., Inc.*,
   443 F. Supp. 3d 1115 (C.D. Cal. 2020)................................................. 14, 24

8

9

*In re MyFord Touch Consumer Litig.*,
   46 F. Supp. 3d 936 (N.D. Cal. 2014) .......................................... 21, 22, 24

10

*Nat'l R.R. Passenger Corp. v. Su*,
   41 F.4th 1147 (9th Cir. 2022)....................................................................... 3

11

12

*Newcal Indus., Inc. v. Ikon Office Sol.*,
   513 F.3d 1038 (9th Cir. 2008)..................................................................... 11

13

*In re Nexus 6P Prods. Liab. Litig.*,
   293 F. Supp. 3d 888 (N.D. Cal. 2018) .................................................. 21, 24

14

15

*In re NJOY, Inc. Consumer Class Action Litig.*,
   2015 WL 12732461 (C.D. Cal. May 27, 2015) ........................................... 11

16

*Pelayo v. Hyundai Motor Am., Inc.*,
   2021 WL 1808628 (C.D. Cal. May 5, 2021) ............................................... 21

17

*Pereda v. Gen. Motors LLC*,
   2022 WL 19975388 (N.D. Cal. Dec. 9, 2022) ............................................ 22

18

19

*Pineda v. Nissan N. Am., Inc.*,
   2022 WL 2920416 (C.D. Cal. July 25, 2022) ............................................. 22

20

*Regueiro v. FCA US, LLC*,
   671 F. Supp. 3d 1085 (C.D. Cal. 2023)....................................................... 20

21

22

*Riley v. Volkswagen Grp. of Am., Inc.*,
   2022 WL 17829997 (9th Cir. Dec. 21, 2022) ............................................. 24

23

*Robson v. Merck & Co., Inc.*,
   2009 WL 10673295 (C.D. Cal. Dec. 14, 2009) ............................................ 8

24

*Rojas v. Bosch Solar Energy Corp.*,
   386 F. Supp. 3d 1116 (N.D. Cal. 2019) ..................................................... 21

25

26

*Rojas-Lozano v. Google, Inc.*,
   159 F. Supp. 3d 1101 (N.D. Cal. 2016) ..................................................... 10

27

*Rubenstein v. Neiman Marcus Grp. LLC*,
   687 F. App'x. 564 (9th Cir. 2017) .............................................................. 17

28

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Seagate Tech. LLC Litig.*,
233 F. Supp. 3d. 776 (N.D. Cal. 2017) ................................................................. 24

*Sidhu v. Bayer Healthcare Pharms., Inc.*,
2023 WL 6541865 (N.D. Cal. Oct. 5, 2023) ............................................................. 7

*Sinatro v. Barilla Am., Inc.*,
2024 WL 2750018 (N.D. Cal. May 28, 2024) ........................................................ 10

*Sloan v. Gen. Motors LLC*,
287 F. Supp. 3d 840 (N.D. Cal. 2018) ................................................................... 14

*Smith v. Intel Corp.*,
2024 WL 3834706 (N.D. Cal. Aug. 15, 2024) ....................................................... 24

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ................................................................................. 20

*Soo Park v. Thompson*,
851 F.3d 910 (9th Cir. 2017) ................................................................................. 18

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ................................................................................................. 7

*Stearns v. Select Comfort Retail Corp.*,
2009 WL 1635931 (N.D. Cal. June 5, 2009) ......................................................... 11

*Steiner v. Vi-Jon Inc.*,
2024 WL 1181002 (N.D. Cal. Mar. 18, 2024) ....................................................... 20

*Takeya USA Corp. v. PowerPlay Mktg. Grp., LLC*,
2022 WL 17357781 (C.D. Cal. Sept. 1, 2022) ...................................................... 25

*Taleshpour v. Apple, Inc.*,
2022 WL 1577802 (9th Cir. May 19, 2022) .......................................................... 19

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) .......................................................................................... 10

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods.
Liab. Litig.*,
754 F. Supp. 2d 1145 (C.D. Cal. 2010) ................................................................. 16

*In re Toyota RAV4 Hybrid Fuel Tank Litig.*,
534 F. Supp. 3d 1067 (N.D. Cal. 2021) ........................................................... 15, 19

*U.S. v. United Healthcare Ins. Co.*,
848 F.3d 1161 (9th Cir. 2016) ................................................................................. 8

*Vancouver Alumni Asset Holdings Inc. v. Daimler AG*,
2017 WL 2378369 (C.D. Cal. May 31, 2017) ....................................................... 11

*Veterans Rideshare, Inc. v. Navistar Int'l Corp.*,
2021 WL 2206479 (S.D. Cal. June 1, 2021) ......................................................... 11

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3    *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.,*
        349 F. Supp. 3d 881 (N.D. Cal. 2018) ............................................................ *passim*

4

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.,*
5        467 F. Supp. 3d 849 (N.D. Cal. 2020) .......................................................... 14, 16

6    *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.,*
        2017 WL 66281 (N.D. Cal. Jan. 4, 2017) ........................................................... 11

7

*Washington v. General Motors Corp.,*
8        406 U.S. 109 (1972) ............................................................................................... 5

9    *Weinstat v. Dentsply Int'l, Inc.,*
        180 Cal. App. 4th 1213 (2010) ........................................................................... 21

10

*Williams v. Apple, Inc.,*
        449 F. Supp. 3d 892 (N.D. Cal. 2020) ............................................................... 10
11

*Zeiger v. WellPet LLC,*
12       304 F. Supp. 3d 837 (N.D. Cal. 2018) ............................................................... 24

13   **Statutes**

14   42 U.S.C. § 7543(a) ..................................................................................................... 3

49 U.S.C. § 32908 ....................................................................................................... 2
15

Cal. Bus. & Prof. Code § 17200 ............................................................................... 19
16

Cal. Civ. Code § 1782(d) .......................................................................................... 18
17

Cal. Civ. Code § 1791.1(a) ....................................................................................... 24
18

Cal. Civ. Code § 1792 ............................................................................................... 24
19

Cal. Veh. Code § 27156 ............................................................................................. 23

20   **Court Rules**

Fed. R. Civ. P. 8 .................................................................................................... 8, 20
21

Fed. R. Civ. P. 9 ................................................................................................ *passim*
22

**Regulations**
23

40 C.F.R § 86 ......................................................................................................... 6, 23

24   49 C.F.R. § 535.3 ......................................................................................................... 2

25

26

27

28

1    Plaintiffs respectfully submit this opposition to Defendant FCA US, LLC's ("FCA")

2   Motion to Dismiss ("MTD," ECF No. 78) the Consolidated Amended Class Action Complaint

3   ("CAC" or "Complaint," ECF No. 75). Several of the background sections and arguments overlap

4   with those advanced more fully in Plaintiffs' Opposition to Cummins' Motion to Dismiss ("Opp.

5   to Cummins' MTD"), which Plaintiffs suggest the Court review first.

6   **I.    INTRODUCTION, FACTUAL BACKGROUND, AND LEGAL STANDARD**

7    For efficiency, Plaintiffs incorporate and refer the Court to the Introduction, Factual

8   Background, and Legal Standard in Plaintiffs' Opposition to Cummins' Motion to Dismiss.

9    FCA's motion, like Cummins', cannot overcome the well-reasoned authority from this

10  District in substantially similar diesel emissions-cheating cases. *See In re Chrysler-Dodge-Jeep*

11  *Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*, 295 F. Supp. 3d 927 (N.D. Cal. 2018)

12  ("*EcoDiesel*"); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 349

13  F. Supp. 3d 881 (N.D. Cal. 2018) ("*VW Clean Diesel*"). Those decisions (particularly *EcoDiesel*)

14  and the controlling authority they rely on, address the majority of FCA's arguments and resolve

15  them in Plaintiffs' favor. FCA's additional arguments fail too.

16   To begin, Plaintiffs' claims are neither expressly nor impliedly preempted by the Clean

17  Air Act ("CAA") or the Energy Policy and Conservation Act ("EPCA"). The EPCA is wholly

18  irrelevant, and neither statute has been found to expressly preempt claims based on

19  misrepresentations directed at consumers. Claims based on fraud to consumers are also not

20  impliedly preempted, even if some of the misrepresentations to consumers are about meeting

21  regulatory limits or obtaining regulatory approval. This is particularly true where, as here, the

22  government agencies have already called foul, thereby eliminating any risk that a jury's

23  determination of non-compliance would undermine an agency's determination of compliance.

24   On standing, FCA's arguments conflict with controlling precedent (which it fails to cite).

25  Moreover, the Complaint adequately identifies actionable affirmative misrepresentations and

26  material omissions. The express warranty claims also survive because the warranties are

27  sufficiently identified, Plaintiffs need not plead reliance, and further presentment would be futile.

28  In addition, Plaintiffs' implied warranty claims survive because vehicles that are illegal to sell are

not merchantable, and there is no notice or privity requirement. Finally, in California, unjust enrichment is a viable equitable claim pled in the alternative to claims with remedies at law.

Again, Plaintiffs' claims are strong, well-supported, and well-pled. FCA's motion to dismiss should be denied.

## II.    ARGUMENT

### A.    Neither the CAA nor the EPCA preempt Plaintiffs' misrepresentation claims.

Like Cummins, FCA argues that Plaintiffs' state law claims are preempted. But while Cummins focuses only on implied preemption of certain theories under the CAA, FCA argues that *all* of Plaintiffs' state law claims and theories are expressly *and* impliedly preempted under *both* the CAA and the EPCA. This shotgun approach is wildly overbroad and lacks real support. FCA does not analyze the text of the statutes or cite *any* cases that found express preemption of state law misrepresentation claims under either statute. FCA carries the burden on this affirmative defense, and it has failed to meet it.[1]

#### 1.    The EPCA has nothing to do with this case.

FCA's argument regarding the EPCA makes no sense. The EPCA governs fuel economy testing, which forms the basis of a vehicle's "window sticker" or Monroney label. But unlike in *In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Pracs. Litig.*, 65 F.4th 851, 860 (6th Cir. 2023), this case does not implicate the fuel economy claims on the Monroney labels or the testing process underlying them. The only fuel economy harm Plaintiffs allege stems from the Emissions Recall 67A predicated by the emissions fraud. Moreover, the fuel economy disclosures of the EPCA do not apply to the heavy-duty trucks at issue here. *See* 49 C.F.R. § 535.3(e)(2)(ii)(A) ("[q]ualifying manufacturers of . . . heavy duty pickups and vans, and engines are not subject to fuel consumption standards for vehicles built before January 1, 2022. . . ."); 49 U.S.C. § 32908 (fuel economy labeling requirements do not apply to automobiles over 8,500 pounds gross vehicle weight). For both of these reasons, the EPCA is irrelevant.

#### 2.    Express preemption does not apply.

FCA's arguments about CAA preemption fare no better. "When . . . a federal statute

---

[1] *See Hollins v. Walmart Inc.*, 67 F.4th 1011, 1018 (9th Cir. 2023) ("[All federal preemption[] is an affirmative defense . . . as to which the defendant bears the burden of proof.").

includes an express preemption provision, 'the task of statutory construction must in the first instance focus on the plain wording of the clause.'" *Nat'l R.R. Passenger Corp. v. Su*, 41 F.4th 1147, 1152 (9th Cir. 2022).[2] Courts also consider "'the surrounding statutory framework' and 'Congress's stated purposes in enacting the statute' to '"identify the domain expressly pre-empted by that language."'" *Id.* at 1152-53. Nonetheless, preemption language is to be "narrowly and strictly construed." *Montalvo v. Spirit Airlines,* 508 F.3d 464, 474 (9th Cir. 2007). Thus, "when the text of a pre-emption [provision] clause is susceptible of more than one plausible reading, courts ordinarily 'accept the reading that disfavors preemption.'" *EcoDiesel*, 295 F. Supp. 3d at 990.

The CAA's express preemption provision prevents only the adoption or enforcement of "any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines subject to this part." 42 U.S.C. § 7543(a). FCA does not explain how this provision bars Plaintiffs' claims, which are based on FCA's *misrepresentations to consumers* regarding vehicle emissions and performance—not the enforcement of emissions standards.

Courts in this District agree. In *EcoDiesel*, for example, the court found "the fraud-on-consumer claims"—precisely the sort alleged here—"are not expressly preempted by the CAA." 295 F. Supp. 3d at 990-92. The district court in *VW Clean Diesel* reached the same conclusion: "Plaintiffs' state law claims, which are all based on VW's misrepresentations to consumers and VW's concealment of material facts from consumers, are not expressly or impliedly preempted by the [CAA]." 349 F. Supp. 3d. at 914; *see also id.* at 910-14 (analyzing express preemption claims under the CAA).

For the contrary position, FCA cites broad statements from an irrelevant, out-of-circuit district court decision: *Counts v. General Motors, LLC*, 681 F. Supp. 3d 778 (E.D. Mich. 2023). The *Counts* opinion involves only *implied* preemption, is on appeal, and was effectively reversed by the Sixth Circuit on the issue of preemption.[3] FCA also cites two other (non-binding) cases it

---

[2] Here, and throughout, emphasis is added and citations omitted unless otherwise indicated.
[3] *Counts* and *In re Duramax Diesel Litigation*—companion cases in the Eastern District of Michigan—were dismissed by the same judge on the same grounds. *Compare Counts*, 681 F. Supp. 3d 778, *with In re Duramax Diesel Liti*g., 681 F. Supp. 3d 767 (E.D. Mich. July 12, 2023)

asserts "dismissed similar emissions-based misrepresentation claims on express preemption grounds." FCA MTD at 6. But, again, neither involved express preemption. In *In re Ford*, 65 F.4th at 860, the court "beg[a]n and end[ed] with implied preemption," not express preemption.[4] The same is true of *Bledsoe v. FCA US LLC*, 2024 WL 445334, at *8 (E.D. Mich. Jan. 26, 2024), where the court unambiguously stated that "implied preemption applies here, not express preemption."[5] Simply put, FCA cites *no authority* for its claims of express preemption.

### 3. Congress has not occupied the field of protecting consumers against unfair and deceptive practices.

FCA next argues that the CAA preempts Plaintiffs' state-law misrepresentation claims because it "occup[ies] the field of new vehicle emissions standards." FCA MTD at 6.[6] This claim of implied preemption is contrary to authority in the Ninth Circuit and ignores clear indications in the CAA that Congress did not intend to occupy the field of emissions regulation.

Field preemption, like conflict preemption, is a species of implied preemption. *EcoDiesel*, 295 F. Supp. 3d at 1000. And because here, as in *EcoDiesel*, the claims involve "areas in which the states have traditionally acted – *i.e.*, air pollution, health and safety, and consumer protection," preemption may not be implied "absent a '*clear and manifest* purpose of Congress.'" *Id.* (quoting *Chae v. SLM. Corp.*, 593 F.3d 936, 944 (9th Cir. 2010) (emphasis in original)); *see also VW Clean Diesel*, 349 F. Supp. 3d at 913 ("[T]here is a presumption that" consumer protection laws "'will not be superseded absent a "clear and manifest purpose of Congress."'"). FCA cannot make that showing and does not meet its burden.

As Judge Chen noted in *EcoDiesel*, "[t]he CAA's express preemption provision [§ 209(a)] is followed by a savings clause which explicitly states that 'Nothing in this part shall preclude or

---

("*Duramax*"). On appeal, the Sixth Circuit reversed *Duramax* on the issue of preemption. *See Fenner v. Gen. Motors, LLC*, 113 F.4th 585 (6th Cir. 2024) (*Duramax* was re-titled *Fenner v. General Motors, LLC* on appeal). Thus, although the *Duramax* appeal was decided first, the reasoning applies equally to *Counts*.

[4] Erasing any possible doubt, the *Ford* court reiterated that "[g]iven that our conclusion on implied preemption disposes of the case entirely, we need not address the alternative arguments the parties raise, including express preemption." *Id.* at 860 n.6.

[5] Both *Counts* and *Duramax*, on which *Bledsoe* based its holding, analyzed only implied preemption.

[6] FCA does not argue that the EPCA occupies any particular field; its brief cites no provisions in the EPCA or any case law supporting such a conclusion.

- 4 -

deny to any State or political subdivision thereof the right otherwise to control, regulate, or restrict the use, operation, or movement of registered or licensed motor vehicles [§ 209(d)].'" 295 F. Supp. 3d at 1001-02. Thus, "it is clear that Congress did not intend to occupy the field to the extent the field is defined (broadly) as motor vehicle emissions." *Id.* at 1001. Put differently, "[n]othing suggests Congress intended to broadly preempt the field of deception, even deception which pertains to emissions." *Id.* at 1002; *see also VW Clean Diesel*, 249 F. Supp. 3d at 913 (rejecting field preemption claims because "the claims here are ultimately about VW's lies about vehicle emissions, not about the emissions themselves").[7] FCA offers no new argument, and the same result should follow.

### 4. Plaintiffs' claims do not conflict with the CAA.

FCA further argues that Plaintiffs' misrepresentation claims are barred by implied conflict preemption on three separate grounds. FCA MTD at 7-9. None succeed.[8]

FCA first argues that Plaintiffs' claims conflict with the CAA[9] to the extent the claims are "premised on FCA US's representations about federal emission standards or regulatory compliance" because such claims would "hinder the federal government's objective of providing *uniform* emissions standards . . . ." FCA MTD at 7. FCA's argument is wrong for all the reasons set forth in Plaintiffs' opposition to Cummins' motion. Opp. to Cummins' MTD at § IV.E. In short, courts in this District have repeatedly rejected this argument because it "conflates the conduct at issue." *VW Clean Diesel*, 349 F. Supp. 3d at 913; *EcoDiesel*, 295 F. Supp. 3d at 1003 ("[T]he gravamen of the complaint is Defendants' deceit; they are not attempting directly to enforce the CAA."). As the Ninth Circuit already concluded, reference to or reliance upon a

---

[7] In so holding, both *EcoDiesel* and *VW Clean Diesel* persuasively distinguish *Washington v. General Motors Corp.*, 406 U.S. 109, 114 (1972), on which FCA mistakenly relies. The same goes for *In re Caterpillar*, in which the court found that "federal regulation of motion vehicle emissions does not extend so far as to preclude [consumer fraud] claims that do not relate to adoption or enforcement of emissions standards." *In re Caterpillar, Inc., C13 & C15 Engine Prods. Liab. Litig.*, 2015 WL 4591236, at *14 (D.N.J. July 29, 2015).

[8] As discussed above, the presumption against preemption applies to FCA's conflict preemption arguments because Plaintiffs' claims arise under state consumer protection statutes and common law tort principles are traditionally within the province of the states.

[9] Again, FCA's argument discusses only the CAA and does not reference the EPCA or case law arising under that statute; to the extent FCA purports to argue for conflict preemption under the EPCA, those arguments should be deemed waived.

federal law to establish a standard of care is not enough to trigger preemption. *McClellan v. I-Flow Corp.*, 776 F.3d 1035, 1041 (9th Cir. 2015) (rejecting argument "any use of federal law to establish a standard of care is an attempt to enforce the underling federal provisions[.]").

FCA's second argument, that the claims are preempted because they "impose remedies **beyond** those provided by federal law for the same conduct . . . " (FCA MTD at 7) fails for the same reason. Penalties for violating the CAA (paid to the government) are different from the damages available to Plaintiffs because the underlying conduct is different. *See VW Clean Diesel*, 349 F. Supp. 3d at 913 (rejecting this argument). FCA's attempts to characterize Plaintiffs' claims as fraud-on-the-regulator claims are simply attempts to re-cast Plaintiffs' claims into something they are not. As in *VW Clean Diesel* and *EcoDiesel*, the gravamen of Plaintiffs' claims is that Defendants deceived them and withheld information about their Trucks' true performance.

Finally, FCA argues that allowing the claims to proceed would risk different juries in different jurisdictions reaching different conclusions, which FCA alleges would create "direct conflicts with the EPA's and other state agencies' determinations . . . ." FCA MTD at 9. FCA ignores the fact that the EPA and CARB *already concluded* that Defendants had in fact installed illegal defeat devices. And even if they had not, a jury's verdict would be limited to the question of whether FCA and Cummins deceived consumers (not the agencies) about their Trucks' emissions and performance. There is no risk of conflict.

Furthermore, the EPA's regulations make clear that when a manufacturer employs an undisclosed defeat device, the effect is <u>not</u> to invalidate any Certificate of Conformity ("COC") that was properly issued. Rather, the effect is that the vehicles are simply *not covered by the COC*. 40 C.F.R. § 86.1848-10. The COC authorized for sale a hypothetical truck conforming in all material respects to the characteristics described in the COC application. But what FCA and Cummins built was a *different* Truck, with *different* characteristics—and because that Truck was not built as described in the COC application, it was never covered by the COC. Thus, even if Plaintiffs' claims depended on the existence of illegal defeat devices under the regulations, there would be no conflict because Plaintiffs are not challenging the approval orders. Rather, to the extent it is relevant, the issue is whether the Class Trucks, as built, conform to the specifications

- 6 -

disclosed in the applications, and whether Defendants misled Plaintiffs and other consumers about the Class Trucks' compliance with federal and state regulations.

Plaintiffs' claims are not preempted and FCA has not met its burden to show otherwise.

### B. Plaintiffs' nationwide fraudulent concealment claim is well-pled (Count II).

#### 1. Plaintiffs have standing under Rule 12(b)(1).

FCA, like Cummins, argues that Plaintiffs (California residents) lack Article III standing to bring fraud claims on behalf of a nationwide class. FCA MTD at 9. Plaintiffs incorporate by reference their opposition to Cummins' motion. Opp. to Cummins' MTD at § IV.C. In brief, both Defendants ignore *Melendres v. Arpaio*, 784 F.3d 1254, 1261 (9th Cir. 2015), which forecloses this argument.

In *Melendres*, the Ninth Circuit held that once a named plaintiff establishes *individual* Article III standing, as Plaintiffs do here, the "standing inquiry is ***concluded*** . . ." and the question of a named plaintiff's ability to represent class members in other states is reserved for class certification. 784 F.3d at 1261. Following *Melendres*, courts in this District have regularly rejected FCA's standing argument. *See, e.g.*, *Sidhu v. Bayer Healthcare Pharms., Inc.*, 2023 WL 6541865, at *7 (N.D. Cal. Oct. 5, 2023); *Gatling-Lee v. Del Monte Foods, Inc.*, 2023 WL 11113888, at *5 (N.D. Cal. Mar. 28, 2023); *Hrapoff v. Hisamitsu Am., Inc.*, 2022 WL 2168076, at *2 (N.D. Cal. June 16, 2022); *EcoDiesel*, 295 F. Supp. 3d at 955-56.

FCA does not dispute that Plaintiffs have "suffered an injury in fact . . . that is fairly traceable to the challenged conduct of the defendant[s], and . . . that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). This ends the Article III inquiry. Any remaining differences between named plaintiffs and class members "are relevant only to class certification, not to standing." *Melendres*, 784 F.3d at 1262.

#### 2. Dismissal under 12(b)(6) for failure to specify which state(s)'s law(s) apply is not warranted.

FCA also asserts that Plaintiffs' nationwide fraudulent concealment claim fails because "Plaintiffs fail to specify under which state(s) law(s) they purport to proceed." FCA MTD at 10. Again, this is a repeat of Cummins' argument, and ignores the plain language of the complaint, which asserts a nationwide class. CAC ¶¶ 197(a), 245. A "nationwide" class is one seeking relief

under the laws of all 50 states. *Amavizca v. Nutra Mfg., LLC*, 2021 WL 682113, at *9 (C.D. Cal. Jan. 27, 2021) ("The putative nationwide class is presumably comprised of citizens of all fifty states[.]"). Plaintiffs have thus alleged this claim under the common law of all 50 states. This plain statement is all that Rule 8(a) requires. Courts in this District have therefore allowed common law fraud claims on behalf of a nationwide classes to proceed without distinction between the common law of individual states. *See, e.g., Collins v. Gamestop Corp.*, 2010 WL 3077671, at *3 (N.D. Cal. Aug. 6, 2010); *Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897, 904 (N.D. Cal. 2021). FCA cites no law in this district that holds otherwise.

**C.     Plaintiffs' fraud claims satisfy Rule 9(b) (Counts III, IV, X, and XI).**

Rule 9(b) requires fraud claims be pled "with particularity" as to "the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). But it "does not require absolute particularity or a recital of the evidence." *U.S. v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016). As explained below, Plaintiffs adequately allege their fraud claims under Rule 9(b) because they sufficiently identify the "who, what, when, where, and how" of the challenged misconduct. *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). They also adequately allege reliance, a duty to disclose, and pre-sale knowledge.

**1.     Plaintiffs adequately plead FCA's misrepresentations.**

Plaintiffs sufficiently allege that FCA made false and misleading statements about the Class Trucks, and that they relied on those statements. FCA's cursory arguments to the contrary ignore Plaintiffs' well-pled allegations. *See* FCA MTD at 10-11, 13-14.

Plaintiffs easily satisfy Rule 9(b)'s "what" and "when" requirements by alleging details about the misrepresentations that they saw and relied upon when they conducted extensive research **before** purchasing their Class Trucks.[10] *See, e.g.*, CAC ¶ 12 (representations that the "Class Truck purportedly had, among other things: a clean-burning DEF system that made it so it

---

[10] *See Corbett v. PharmaCare U.S., Inc.*, 567 F. Supp. 3d 1172, 1196 (S.D. Cal. 2021) (Rule 9 satisfied when plaintiffs "state[d] they first saw the misleading representations a couple of months or weeks before their first purchase"); *Robson v. Merck & Co., Inc.*, 2009 WL 10673295, at *2 (C.D. Cal. Dec. 14, 2009) ("when" requirement satisfied when the plaintiff alleged time leading up to the relevant transaction); *Cal. Pharmacy Mgmt., LLC v. Zenith Ins. Co.*, 669 F. Supp. 2d 1152, 1159 (C.D. Cal. 2009) (Rule 9 satisfied by fraud "[s]tarting approximately one year ago").

would emit less pollutants than earlier models and/or equivalent gasoline-powered trucks; complied with emissions law and regulations; good fuel economy; low cost of ownership; and strong towing and hauling capabilities."); *see also id.* ¶¶ 18, 24, 30, 36, 42, 48, 55, 61, 67.

Plaintiffs' allegations also satisfy Rule 9(b)'s "who," "where," and "how" requirements because Plaintiffs provide examples of FCA's misrepresentations that track the specific representations that Plaintiffs saw and relied upon. *See id.* ¶¶ 147-54 (describing statements that the Class Trucks are clean-burning, emissions-compliant, and the lowest emitting diesel engine ever produced); *id.* ¶¶126, 153 (each Truck's label indicated conformity with California regulations); *id.* ¶¶155-64 (describing FCA's statements that the Class Trucks are class-leading in fuel economy, have a low cost of ownership, and comply with emissions regulations).[11]

Each Plaintiff alleges "where" they saw the misrepresentations: on Defendants' websites. *Id.* ¶¶ 12, 18, 24, 30, 36, 42, 48, 55, 61, 67. Certain Plaintiffs also allege that salespeople at FCA dealerships made misrepresentations to them about the Trucks. *Id.* ¶¶ 24, 30, 36, 42, 55, 67. And some Plaintiffs allege they saw misrepresentations in brochures or trade magazines and online videos. *Id.* ¶ 55, 61.

Finally, Plaintiffs allege that FCA "placed a label in each Class Truck representing that the vehicle conformed to . . . California emissions standards." CAC ¶ 153. The Court can infer that Plaintiffs saw and relied on these misrepresentations. *See Michael v. Honest Co., Inc.*, 2016 WL 8902574, at *18 (C.D. Cal. Dec. 6, 2016) ("Where the alleged misrepresentation appears on the label . . . of each item sold, classwide exposure may be inferred."); *EcoDiesel*, 295 F. Supp. 3d at 1013 n.18 ("Because the . . . logo is on the face of each Class Vehicle, there is a plausible assertion of pervasive advertising from which an inference of reliance could be made."); *see also Sinatro v. Barilla Am., Inc.*, 2024 WL 2750018, at *6 (N.D. Cal. May 28, 2024).

Taken together, these allegations sufficiently describe the misrepresentations to put FCA on notice of its misconduct, satisfying Rule 9(b). *See Cooper v. Pickett*, 137 F.3d 616, 627 (9th

---

[11] For example, Plaintiff Biederman's allegations in ¶ 12 track the representations alleged about the Class Trucks as follows: a clean-burning DEF system (*compare with* ¶¶ 148, 150), complied with emissions law (*compare with* ¶¶ 148-52), good fuel economy (*compare with* ¶¶ 157-58), low cost of ownership (*compare with* ¶¶ 156-57), and strong towing and hauling (*compare with* ¶¶ 158, 163).

1    Cir. 1997) (Rule 9(b) satisfied where complaint identified circumstances of alleged fraud so

2    defendants could prepare an adequate answer).

3          FCA's argument that Plaintiffs did not allege reliance recycles its argument that Plaintiffs

4    failed to allege details about the misrepresentations they saw. *See* FCA MTD at 4-5. But reliance

5    is satisfied where Plaintiffs allege that in the absence of a misrepresentation they would have

6    acted differently. *Chapman v. Skype, Inc.*, 220 Cal. App. 4th 217, 229-30 (2013); *Bruton v.*

7    *Gerber Prods. Co.*, 961 F. Supp. 2d 1062, 1087 (N.D. Cal. 2013) (reversed on other grounds); *In*

8    *re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009).[12] Each Plaintiff does so. *See* CAC ¶¶ 11-71,

9    271-72, 286-88, 368-71.

10         Further, "a presumption of actual reliance arises whenever a misrepresentation is

11   material." *Morales v. Unilever U.S., Inc.*, 2014 WL 1389613, at *3 (E.D. Cal. Apr. 9, 2014).

12   Again, each Plaintiff alleges that had they known the truth they would not have purchased the

13   Class Trucks or would have paid less for them, which is the definition of materiality. And where

14   Plaintiffs allege exposure to multiple misrepresentations, they need not allege "that each type of

15   misleading labeling characteristic separately misled [them]." *DePhillippis v. Living Essentials,*

16   *LLC*, 2018 WL 7051065, at *4 (S.D. Cal. Nov. 29, 2018). Instead, it suffices to plead "several

17   allegedly misleading characteristics together misled [them]." *Id.* Here, Plaintiffs plead actual

18   reliance by describing the multiple misrepresentations they were exposed to and which they relied

19   on prior to purchasing the Class Trucks.

20         **2.**    **Plaintiffs' misrepresentation claims are not based on puffery.**

21         FCA, like Cummins, also contends that, "[n]early all of the alleged misrepresentations

22   constitute inactionable puffery." FCA MTD at 13. FCA's argument ignores Plaintiffs' well-pled

23   allegations, which are specific and capable of objective verification (primarily through scientific

24

---

25   [12] FCA's citations are inapposite. *See Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 913 (N.D. Cal. 2020) (plaintiffs acknowledged they did not view or read the alleged misrepresentations);

26   *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1114 (N.D. Cal. 2016) (plaintiff did "not even allege[] what representations she encountered, let alone that she relied upon them");

27   *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1048 (N.D. Cal. 2014) (plaintiffs failed to allege

28   that they made their purchase in reliance to the alleged misrepresentations).

measurement) and many of which *have already been proven false* by the EPA and CARB.[13]

Puffery involves outrageous generalized statements not subject to objective evaluation. *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1081 (N.D. Cal. 2017). A misrepresentation is actionable unless "the claim is extremely unlikely to induce consumer reliance." *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008). If a reasonable consumer could possibly consider the statement to be true, a statement is not puffery. *See Stearns v. Select Comfort Retail Corp.*, 2009 WL 1635931, at *11 (N.D. Cal. June 5, 2009). Courts do not assess statements for puffery "in a vacuum," but instead examine the relevant context to determine if they are actionable. *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2017 WL 66281, at *17 (N.D. Cal. Jan. 4, 2017). Critically, "whether . . . misrepresentation[s] would deceive an ordinary consumer is a factbound question not suitable for resolution at the motion to dismiss stage." *In re NJOY, Inc. Consumer Class Action Litig.*, 2015 WL 12732461, at *12 (C.D. Cal. May 27, 2015). As with Cummins' motion, each of the categories of representations FCA targets is actionable.

First, FCA's misrepresentations that the Class Trucks met federal and state emissions standards (*see* CAC ¶¶ 147-49, 151-53) make "specific assertion[s] about the engines that [are] measurable against a national standard." *Veterans Rideshare, Inc. v. Navistar Int'l Corp.*, 2021 WL 2206479, at *9 (S.D. Cal. June 1, 2021) (statement that "MaxxForce engines . . . would meet . . . EPA Standards goes beyond mere puffery[.]"); *Vancouver Alumni Asset Holdings Inc. v. Daimler AG*, 2017 WL 2378369, at *12-13 (C.D. Cal. May 31, 2017) (rejecting puffery argument and finding that defendants made "objective and material misrepresentations" that "BLUETEC automobiles fulfill the strictest emission standards," were emissions-compliant "in all 50 U.S. states," and had optimized diesel engines "to achieve significantly lower . . . emissions").

FCA's misrepresentations about the Class Trucks' Selective Catalytic Reduction (SCR)/Diesel Exhaust Fluid (DEF) systems (*see, e.g.*, CAC ¶¶ 147-57) are also actionable because those claims relate to specific functions and capabilities of the Class Trucks. *See Graham*

---

[13] Unlike Plaintiffs' allegations here, the four cases FCA relies on in its motion dealt with alleged representations that were patently general and subjective.

*v. Cent. Garden & Pet Co.*, 2023 WL 2744391, at *3 (N.D. Cal. Mar. 30, 2023) ("'A statement that is quantifiable, that makes a claim as to the specific or absolute characteristics of a product, may be an actionable statement of fact. . . .'") (Corley, J.). FCA claimed the Class Trucks were sold with properly functioning SCR/DEF systems that reduce NOx, but the Class Trucks' SCR/DEF systems did not function the way they were represented, which led to "NOx emissions several times the CARB-compliant levels." CAC ¶¶ 127, 113-14, 119, 133-36, 140-41. These statements regarding the specific, absolute characteristics of the Trucks are not puffery.

Consistent with this reasoning, FCA's misrepresentations regarding the Class Trucks' fuel economy are also actionable. *See, e.g.*, CAC ¶¶ 155-60. FCA's claims about improved fuel efficiency and reductions in operating costs were objectively misleading as illustrated by the real-world experiences of Plaintiffs and other Class Members who have experienced post-Emissions Recall 67A increases in fuel and DEF consumption. *Id.* ¶¶ 11-71, 137-46. Plaintiffs allege that FCA's marketing claims about fuel efficiency and reduced operating costs were achieved only through Defendants' deceptive employment of Defeat Devices. *Id.* ¶¶ 137-38, 159-62.

FCA's "Best in Class" claims are also specific and quantifiable. *Id.* ¶¶ 150, 157, 163. For example, FCA marketed that the MY 2013 Ram 2500 and Ram 3500 offered best-in-class torque, quantifying the torque at 850 pound-feet and defining the class as "350/3500 full-size pickups." *Id.* ¶ 163 n.53 (2013 Ram 2500/3500 marketing brochure). FCA also represented the Ram 3500 had best-in-class towing capacity at 30,000 pounds. *Id.* These statements regarding the Trucks' specific, absolute characteristics are actionable non-puffery.

FCA's conclusory argument that Plaintiffs cannot identify anything false or misleading about FCA's marketing of DEF consumption and pollution levels is also false. FCA MTD at 13. Plaintiffs allege, "FCA was particularly aware that DEF consumption was material to the average consumer of diesel vehicles and regularly advertised the Class Trucks' 'low cost of ownership.'" CAC ¶ 156; ¶¶ 157-58 (examples of FCA's marketing materials discussing low cost of ownership). These representations have now been demonstrated to be false following the EPA's and CARB's investigation into the Class Trucks, which resulted in Emissions Recall 67A. *Id.* ¶¶ 111, 113, 119, 123, 132-38. Plaintiffs allege they have experienced first-hand a significant

increase in DEF consumption due to Emissions Recall 67A. *Id.* ¶¶ 16, 22, 28, 59, 135-38, 141.

Finally, Plaintiffs alleged FCA's actionable misrepresentations about the Class Trucks' pollution levels in the context of FCA's extensive marketing focus on emissions controls. *See, e.g.*, *id.* ¶¶ 151 ("'[t]he SCR-equipped diesels . . . *also operate cleaner by lowering greenhouse-gas emissions* and better managed soot production than Lean NOx Trap [ ] technology.'"); 152 ("Cummins engine is the (or 'one of the') '*lowest emitting diesel engine[s] ever produced*.'"). *See VW Clean Diesel*, 349 F. Supp. 3d at 911 (claims of "ultra low emissions" were objectively verifiable because plaintiffs could prove that the "vehicles' actual emissions were far above the industry average and thus not 'ultra low'"). The EPA and CARB have since shown that these representations regarding the Class Trucks' emissions are false. *See, e.g.*, CAC ¶¶ 2, 5-9, 99-131.

In short, FCA's misrepresentations are actionable because they were specific, objectively verifiable, and could be relied on by reasonable consumers. *See Graham*, 2023 WL 2744391, at *3.

### 3.    Plaintiffs adequately plead FCA's omissions.

FCA next asks this Court to dismiss Plaintiffs' fraudulent omission claims for two reasons: (1) Plaintiffs have not specified which Defendant concealed which facts; and (2) Plaintiffs do not sufficiently allege reliance. FCA MTD at 11-12. Both arguments fail.

Plaintiffs' allegations about FCA's omissions and concealment are clear: FCA concealed that it designed, manufactured, marketed, and sold Class Trucks with defeat devices that illegally reduce the effectiveness of the Class Trucks' emission control system. *See* CAC ¶¶ 1, 8, 106-08, 114-15, 119, 123, 125. FCA also concealed the necessity of Emissions Recall 67A to make the Class Trucks compliant, and the negative impacts of that recall, including increased fuel and DEF consumption, and decreased reliability and durability. *Id*. ¶¶ 9, 132-46, 267. These concealments rendered FCA's marketing about reliability, emissions compliance, environmental friendliness, superior fuel economy, and a low cost of ownership false and deceptive. *See id.* ¶¶ 147-64.

Against these detailed allegations, FCA's argument that Plaintiffs failed to allege FCA's omissions with specificity falls flat. *Hardt v. Chrysler Grp. LLC*, 2015 WL 12683963, at *8 (C.D. Cal. Mar. 16, 2015) (allegations that defendant knew about, yet failed to disclose, material facts

about a product defect sufficed to plead fraud). Notably, Rule 9(b) is relaxed where, as here, a claim rests on an omission, because "a plaintiff cannot plead either the specific time of [an] omission or the place, as he is not alleging an act, but a failure to act." *Mosqueda v. Am. Honda Motor Co., Inc.*, 443 F. Supp. 3d 1115, 1124 (C.D. Cal. 2020); *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007) ("[F]raud by omission or fraud by concealment claim 'can succeed without the same level of specificity required by a normal fraud claim.'").

FCA's reliance arguments fail for the same reasons noted above. Furthermore, "the actual viewing of advertisements is not required in an omission case." *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 874-75 (N.D. Cal. 2018). Instead, to plead an omissions claim, Plaintiffs need only allege that they "had an *opportunity* to receive and therefore rely on the omitted information, not whether they actually received some other, irrelevant information." *Id*. at 875 (emphasis in original). Indeed, Plaintiffs all allege that "had Defendants not concealed the Defeat Devices and disclosed that the Class Truck could perform as advertised only by emitting pollutants at unlawful levels not expected by a reasonable consumer, [they] would have seen and reviewed such disclosures and would not have purchased the Class Truck or would have paid less for it." CAC ¶¶ 14-15, 21, 27, 33, 39, 45, 52, 58, 64, 70. And because each Plaintiff purchased their Class Truck from an FCA authorized dealer, that is sufficient to show that each Plaintiff would have been aware of a disclosure had it been made by the dealer. *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1226 (9th Cir. 2015).[14]

### 4.    Plaintiffs adequately plead FCA's duty to disclose.

<u>Materiality</u>: Under California law, a duty to disclose material facts arises where the defendant: (1) had exclusive knowledge of material facts not known to the plaintiff; (2) made partial representations but also suppressed material facts; or (3) concealed a material fact. *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 467 F. Supp. 3d 849, 860 (N.D. Cal. 2020) ("*In re Volkswagen*"). Plaintiffs alleged FCA owed a duty to disclose the defeat devices and the effect of Recall 67A to Plaintiffs for each of those reasons. *See* ¶ 270(a)-(d).

---

[14] Although Plaintiffs allege reliance with specificity under this standard, "reliance may be presumed (or at least inferred) when a defendant's omission is material." *EcoDiesel*, 295 F. Supp. 3d at 1013. As explained in § C(4), *infra*, FCA's omissions were material.

FCA first argues, without explanation or citations to supporting law, that Plaintiffs fail to "explain why [Defendants'] misrepresentations" were material. FCA MTD at 14. FCA's argument is confusing because a duty to disclose only arises in the context of *omissions*, but in any event, Plaintiffs allege that FCA omitted facts that were material because "had the omitted information been disclosed, [they] would have been aware of it and behaved differently." *See Finney v. Ford Motor Co.*, 2018 WL 2552266 (N.D. Cal. June 4, 2018); CAC ¶¶ 13-16, 18-21, 24-27, 30-34, 36-39, 42-45, 48-52, 55-58, 61-64, 67-70. Plaintiffs thus have sufficiently alleged materiality. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 n.7 (9th Cir. 2013) ("[T]he materiality of a misrepresentation is typically an issue of fact [that] should not be decided at the motion to dismiss stage.").

Central Function: To begin, the "central function" requirement does not apply to Plaintiffs' omission claims based on FCA's misleading and incomplete representations. *See Hodsdon v. Mars, Inc.*, 891 F.3d 857, 860-64 (9th Cir. 2018) (distinguishing between "pure omission cases," which may require pleading central function, and "partial misrepresentation case[s]," which do not). Plaintiffs allege that FCA owed them a duty to disclose because it "[m]ade, helped make, or conspired to make misleading and incomplete representations" about the Trucks' emissions and the effects of the Recall "while purposefully withholding material facts . . . that contradicted these representations." CAC ¶¶ 270(d); 253, 283, 366(d). These "partial misrepresentation" claims do not have a central function pleading requirement.

Regarding the "pure omission" claims, Plaintiffs allege facts that plausibly show the defects at issue affect the Class Trucks' central function.[15] Again, because of the Defeat Devices, the Class Trucks emitted excessive pollution, were not covered by valid COCs and EOs, and were thus illegal under state and federal emissions standards. *See, e.g.*, *id.* ¶¶ 8, 106-28. The ability to legally operate the Class Trucks is central to their function, and FCA is incorrect that centrality is met only when a product is completely unusable. *See Hammerling v. Google LLC*, 615 F. Supp.

---

[15] Plaintiffs dispute that "pure omission" claims require pleading that the defect is either a safety hazard or central to the product's function. *See In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1101-04 (N.D. Cal. 2021) ("*Toyota RAV4*") (finding case law "ambiguous" on the central function requirement and not requiring it to state omission claim). However, Plaintiffs acknowledge that the case law is mixed.

1    3d 1069, 1086 (N.D. Cal. 2022); *Knowles v. ARRIS Int'l PLC*, 847 F. App'x 512, 513-14 (9th Cir.

2    2021). FCA has not even attempted to meet its burden to show otherwise.

3        <u>*LiMandri* Factors</u>: Finally, FCA argues that Plaintiffs do not adequately plead any

4    "*LiMandri*" factors—exclusive knowledge, partial and misleading representations, and active

5    concealment. FCA MTD at 15. In support, FCA simply cites its earlier arguments that Plaintiffs

6    failed to allege pre-sale knowledge and failed to specifically identify the "who, what, when,

7    where, and why" of FCA's representations, which Plaintiffs address above and below. *See* §§

8    C(1), *supra*; C(5), *infra*.

9        FCA also incorrectly argues that Plaintiffs plead no facts showing concealment. To the

10    contrary, Plaintiffs allege that FCA concealed the Defeat Devices from Plaintiffs, consumers, and

11    the government. *See, e.g.*, CAC ¶¶ 187, 229, 240, 247, 249. FCA's concealment is further

12    evidenced by the allegations that Cummins fraudulently obtained COCs authorizing FCA to sell

13    the Trucks with knowledge of the Defeat Devices. *Id.* ¶¶ 106, 108. Plaintiffs also allege that FCA

14    (with Cummins) concealed that a recall with negative effects on the Trucks' power, DEF

15    consumption, and fuel efficiency would be required for the Trucks to comply with emissions

16    standards. *Id.* ¶ 251. Once EPA/CARB discovered the defeat devices, FCA concealed the

17    negative impacts of Recall 67A. *Id.* ¶¶ 251, 266, 270, 390. FCA's actions to "actively conceal"

18    material facts, including through withholding information from regulators, give rise to a duty to

19    disclose. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods.*

20    *Liab. Litig.*, 754 F. Supp. 2d 1145, 1172 (C.D. Cal. 2010); *EcoDiesel*, 295 F. Supp. 3d at 1008

21    (finding duty to disclose where defendants "took affirmative steps to conceal the defeat devices—

22    including not identifying them for the [regulators]"); *In re Volkswagen*, 467 F. Supp. 3d at 861.

23        **5.    Plaintiffs adequately allege FCA's pre-sale knowledge of the defect.**

24        Because FCA's pre-sale knowledge may be pleaded generally under Rule 9(b), Plaintiffs

25    "need only allege sufficient facts to support an inference" of the defendant's knowledge. *Doyle v.*

26    *Chrysler Grp. LLC*, 2014 WL 1910628, at *6 (C.D. Cal. Jan. 29, 2014). The law has always

27    treated knowledge as a special case in the pleading context because defendants have unique

28    control over the fact of their own knowledge. *See Rubenstein v. Neiman Marcus Grp. LLC*, 687 F.

App'x. 564, 567-68 (9th Cir. 2017); *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). Here, Plaintiffs allege facts from which this Court can reasonably infer that FCA, as a sophisticated entity and long-time close partner with Cummins, plausibly knew of the existence and function of the Defeat Devices before it offered the Class Trucks for sale.

Indeed, Plaintiffs allege that FCA was a knowing and willing participant in the Emissions Fraud Enterprise that "was formed to obtain EPA COCs, as well as CARB Executive Orders, and to mislead, deceive, and induce members of the public to purchase the Class Trucks." CAC ¶¶ 208-43. In particular, Plaintiffs allege that FCA furthered the Enterprise by "[m]isrepresenting . . . material information regarding . . . unlawfully high emissions of the Class Trucks," *id*. ¶ 221(b), and used a "common communications network by which co-conspirators shared information on a regular basis" about the "designing, manufacturing, marketing, testing, and selling of the Class Trucks." *Id*. ¶ 225. Additionally, FCA's knowledge is supported by the fact that around the time that Cummins added the Defeat Devices to the first model year Class Trucks in 2013, FCA was designing and preparing to add *its own* Defeat Devices to its MY 2014-2016 Ram 1500 and 2014-2016 Jeep Grand Cherokee EcoDiesel vehicles. *Id*. ¶¶ 3, 178, 179.

The plausibility of Plaintiffs' allegations is bolstered by the long-standing intimate relationship between Defendants. For example, "Cummins has been providing diesel engines for Ram-branded pickup trucks dating back to 1989. Until 2013, Cummins was the exclusive supplier to Ram of diesel engines . . . ." CAC ¶ 104. FCA's marketing materials "routinely emphasize the strong partnership and cooperation between FCA and Cummins, and the benefits thereof." *Id*. ¶ 164. The Cummins 2012-2013 Sustainability Report includes an article entitled "Ram-Cummins partnership celebrates major milestones: Enduring relationships pass the test of time whether it's a marriage, friendship or business relationship." *Id*. ¶ 166. In a 2019 article, Cummins boasted that "[t]he relationship that Ram Truck has with Cummins is one of the industry's most enduring." *Id*. ¶ 173. The Court can infer that Cummins would not have risked its close, lucrative relationship with FCA by installing the Defeat Devices without FCA's knowledge and concurrence—especially since FCA is an experienced diesel engine manufacturer and could easily detect the Defeat Devices.

Plaintiffs' allegations are similar to those in *EcoDiesel*, where the Court found allegations of pre-sale knowledge sufficient because "the thrust of the complaint is that there was purposeful manipulation of the system by the various defendants involved in the design and manufacturing process to achieve the deceptive result (*i.e.*, ability to pass the emissions tests but no proper emissions control . . . ). Given the allegation of specific manipulation, it is reasonable to infer knowledge on the part of Defendants[.]" 295 F. Supp. 3d at 1012.

In sum, considering the totality of the foregoing allegations, and drawing all inferences in Plaintiffs' favor, the Court should find that Plaintiffs plausibly alleged FCA's pre-sale knowledge. Importantly, because Defendants needed to maintain secrecy to execute their conspiracy, most of the facts regarding this conspiracy are within the possession and control of the Defendants, and not required to state a claim. *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017).[16]

### 6.    Statute-specific arguments

#### a.    Plaintiffs provided CLRA pre-suit notice.

FCA's argument that Plaintiffs failed to provide FCA adequate notice under the CLRA is simply wrong. *See* FCA MTD at 15-16. The CLRA authorizes a plaintiff to file an action for injunctive relief without first notifying the defendant, and then, at least 30 days later, amend the complaint to seek damages after providing notice. Cal. Civ. Code § 1782(d); *In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030, 1038 (N.D. Cal. 2012) (notice requirement met where the complaint first sought injunctive relief and after amendment, 60 days later, sought damages).

Plaintiffs Biederman and Troedsson filed their complaint on December 27, 2023. ECF 1. In their CLRA claim, they sought *only* injunctive relief, contemporaneously served a CLRA notice letter, and alleged they would later amend to seek monetary damages. *Id.* ¶¶ 127-139. Over 30 days later, on September 10, 2024, Plaintiffs filed the CAC seeking damages. *Id.* ¶ 275. The newly added Plaintiffs only sought injunctive relief, sent an additional notice letter to FCA on September 6, 2024, and will amend to seek monetary damages when appropriate. *Id.* ¶ 276. The CLRA notice requirement has thus been met.

---

[16] Pre-sale knowledge is not required to plead claims under the unfair and unlawful prongs of the UCL. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 179 (1999).

1

**b.      Plaintiffs adequately plead their UCL claim.**

2      The UCL prohibits "unlawful, unfair[,] or fraudulent business act[s] or practice[s]" and

3  "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Plaintiffs

4  bring claims under each of the three UCL prongs—unlawful, fraudulent, and unfair. *In re Toyota*

5  *RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1100 (N.D. Cal. 2021) ("*Toyota RAV4*").

6      FCA argues that Plaintiffs' claim under the "fraudulent" and "unfair" prongs fails for the

7  same reason that Plaintiffs' fraud claims fail under Rule 9(b) and that Plaintiffs' claim fails under

8  the "unlawful" prong because they do not adequately allege violations of other laws. FCA MTD

9  at 16-17. These derivative arguments fail for the reasons articulated above. *See, e.g.*, § C, *supra*.

10     FCA's non-derivative arguments fare no better. First, FCA offers no support for its

11  argument that, for the unfair prong, Plaintiffs plead "no facts tying the UCL claim to any

12  legislative policy, anti-competitive behavior, or conduct that is 'immoral, unethical, oppressive,

13  unscrupulous or substantially injurious to consumers.'" FCA MTD at 16. "An act or practice is

14  unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to

15  consumers or to competition, and is not an injury the consumers themselves could reasonably

16  have avoided." *Taleshpour v. Apple, Inc.*, 2022 WL 1577802, at *2 (9th Cir. May 19, 2022).

17  Plaintiffs specifically allege that, in light of the numerous allegations regarding FCA's concealed

18  and illegal misconduct and its effect on Plaintiffs and the Class,

19          (a) the gravity of harm to Plaintiffs and the California Subclass from Defendants'
            acts and practices far outweighs any legitimate utility of that conduct; (b) the
20          conduct is immoral, unethical, oppressive, unscrupulous, or substantially injurious
            to Plaintiffs and members of the proposed Class; (c) the injury is not one that
21          consumers reasonably could have avoided; (d) the conduct undermines or violates
            the stated public policies underlying the laws alleged herein.
22

23  CAC ¶ 372. That is sufficient, because a finding of "[w]hether a practice is . . . unfair is generally

24  a question of fact which requires consideration and weighing of evidence from both sides and

25  which usually cannot be made [at the pleading stage]." *Regueiro v. FCA US, LLC*, 671 F. Supp.

26  3d 1085, 1098 (C.D. Cal. 2023).

27     Additionally, FCA argues that the UCL claims fail because Plaintiffs did not plead facts

28  showing they lack an adequate remedy at law. FCA MTD at 17. But Rule 8(d) allows a party to

plead alternative claims, and there is "no basis in . . . for prohibiting the plaintiffs from pursuing

their equitable claims in the alternative to legal remedies at the pleadings stage." *Infanzon v.*

*Allstate Ins. Co.*, 2020 WL 3891671, at *6 (C.D. Cal. Apr. 14, 2020). Here, Plaintiffs' alternative

allegations that they have no adequate remedy at law (CAC ¶ 380) suffice. *See Belyea v.*

*GreenSky, Inc.*, 2023 WL 8701311, at *7 (N.D. Cal. Dec. 15, 2023) (Corley, J.); *Steiner v. Vi-Jon*

*Inc.*, 2024 WL 1181002, at *7 (N.D. Cal. Mar. 18, 2024) (collecting cases).

Contrary to FCA's representations, *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th

Cir. 2020) does not hold otherwise. In *Sonner*, the plaintiff strategically dropped her CLRA claim

after four years of litigation to secure a bench trial. *Id.* at 837. By that time, the CLRA claim had

already survived a motion for summary judgment. *Id.* This case is at the pleading stage and

involves no such gamesmanship. Here, at the pleading stage, Plaintiffs' allegations of an

inadequate remedy at law are sufficient to avoid dismissal. *Johnson v. Trumpet Behav. Health,*

*LLC*, 2022 WL 74163, at *3 (N.D. Cal. Jan. 7, 2022) ("[I]f a plaintiff pleads that she lacks an

adequate legal remedy, *Sonner* will rarely (if ever) require more this early in the case.").

### D.    The express warranty claims are cognizable (Counts V, VI, and IX).

FCA argues that Plaintiffs' express warranty claims should be dismissed for failure to

allege (1) exact terms of the relevant warranties, (2) reliance, (3) repeated repair attempts, and/or

(4) pre-suit notice. FCA MTD at 17-20. FCA is wrong on each front.

### 1.    Plaintiffs adequately allege the warranty terms.

The Complaint is replete with specific allegations about the relevant warranty terms. CAC

¶¶ 297 (warranty to repair in the case of "defects in material and workmanship"); 298 (EPA-

required warranty that emissions system "is designed, built, and equipped" to conform with the

law at time of sale and "free from defect in materials and workmanship" causing failure to

conform; providing protection for "five years or 50,000 miles"); 299 (warranty covering

"catalysts, powertrain control modules and transmission control modules" for eight years or

80,000 miles); 300 (CARB-required warranty that "enumerated parts in the [] emissions system

are free from defects," and providing "FCA [will] repair them at no cost for seven years or 70,000

miles"). Plaintiffs also set forth how FCA breached these warranties: the Class Trucks were

defectively designed and manufactured to illegally emit more pollution than was disclosed, and FCA cannot fix these defects without negatively affecting performance. *Id.* ¶¶ 8, 9, 302-03. Such allegations are regularly deemed sufficient. *See, e.g.*, *Hastings v. Ford Motor Co.*, 495 F. Supp. 3d 919, 924 (S.D. Cal. 2020) (finding sufficient allegations of "3-year/36,000 mile express bumper to bumper warranty" wherein defendant "would repair the [v]ehicle if a covered defect arose," and "breached the warranty by failing to repair the defect or buy back the [v]ehicle[.] ").[17]

### 2.    Reliance is not an element of warranty claims.

FCA's reliance argument also fails. In adopting the UCC, California eliminated the reliance requirement for express warranties. *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (2010) (analyzing language in UCC). Numerous courts have acknowledged this shift. *See, e.g.*, *Coelho v. Hyundai Motor Am.*, 2023 WL 3763812, at *5 (N.D. Cal. May 31, 2023); *Rojas v. Bosch Solar Energy Corp.*, 386 F. Supp. 3d 1116, 1124 (N.D. Cal. 2019); *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 916 (N.D. Cal. 2018); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 973 (N.D. Cal. 2014).[18] Reliance is also not required for express warranty claims brought under the Song-Beverly Act. *In re MyFord Touch*, 46 F. Supp. 3d at 974.

But even if the Court finds reliance necessary, reliance can be based on "representations made by the manufacturer in . . . advertising material." *Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682, 696 (1954); *Mosher-Clark v. Gravity Defyer Med. Tech. Corp.*, 691 F. Supp. 3d 1113, 1122-23 (N.D. Cal. 2023). Plaintiffs all allege that they "conducted extensive research, including reviewing information on Defendants' websites," plausibly implying reliance on warranty information contained therein. CAC ¶¶ 12, 18, 24, 30, 36, 42, 48, 55, 61, 67, 186.

---

[17] FCA's cases are inapposite. *See Kargar v. BMW of N. Am. LLC*, 2024 WL 3915218, at *2 (C.D. Cal. Aug. 6**,** 2024) (alleging only the existence of "various warranties"); *Cho v. Hyundai Motor Co., Ltd.*, 636 F. Supp. 3d 1149, 1172 (C.D. Cal. 2022) (failing to connect defect or breach to specific warranty); *Pelayo v. Hyundai Motor Am., Inc.*, 2021 WL 1808628, at *6 (C.D. Cal. May 5, 2021) (same); *Hardt*, 2015 WL 12683963, at *12 (same); *Becerra v. Gen. Motors LLC*, 241 F. Supp. 3d 1094, 1113 (S.D. Cal. 2017) (providing only general description of warranty).
[18] Although some cases go the other way, they are in the minority. *See, e.g.*, *Cho*, 636 F. Supp. 3d at 1174 (acknowledging split in authority); *Coleman v. Boston Sci. Corp.*, 2011 WL 381317, at *4 (E.D. Cal. Aug. 29, 2011) (distinguishing *Weinstat*). The majority position, exemplified in *In re Nexus 6P*, is better reasoned. 293 F. Supp. 3d at 916.

### 3.    There is no further fix available, so presentment is futile.

Plaintiffs all allege that they have or intend to have Recall 67A performed, that the recall caused significant performance problems, and that any attempts at repair would be futile. CAC ¶¶ 16, 22, 28, 34, 40, 53, 59, 65, 71, 303-05, 321, 356. This is enough to meet the repair requirement for Plaintiffs' express warranty claims.

Plaintiffs do not dispute that Class Trucks were only brought in for repair, at most, one time. But contrary to FCA's assertions, California district courts excuse presentment where, as here, Plaintiffs allege that that the repair would be futile because the defect is common to all vehicles and the offered repair would be inadequate. *See, e.g.*, *Johnson v. Nissan N. Am., Inc.*, 2018 WL 905850, at *4 (N.D. Cal. Feb. 15, 2018) (finding futility where Nissan repeatedly failed to disclose defect or provide repairs); *Benkle v. Ford Motor Co.*, 2017 WL 9486154, at *12 (C.D. Cal. Dec. 22, 2017) (excusing presentment where defect common to all vehicles and repair would be inadequate); *In re MyFord Touch*, 46 F. Supp. 3d at 970 (similar); *Gertz v. Toyota Motor Corp.*, 2011 WL 3681647, at *3 (C.D. Cal. Aug. 22, 2011) (similar). FCA's cases do not compel a different result. *Arakelian v. Mercedes-Benz USA, LLC*, 2018 WL 6422649, at *3 (C.D. Cal. June 4, 2018) (recognizing futility may provide exception); *Pereda v. Gen. Motors LLC*, 2022 WL 19975388, at *13 (N.D. Cal. Dec. 9, 2022) (conceding other courts have recognized the futility exception).

Plaintiffs who completed the recall allege: the number of attempts (one), the defect addressed (removal/reprogramming of the cheat device), and the issue undergoing repair (excessive pollution). Accordingly, these Plaintiffs do not run afoul of *Pineda v. Nissan N. Am., Inc.*, 2022 WL 2920416, at *3 (C.D. Cal. July 25, 2022) or *Acedo v. DMAX, Ltd.*, 2015 WL 12912365, at *18 (C.D. Cal. July 31, 2015).[19] And because these Plaintiffs also allege the ongoing unavailability of an adequate fix, they sufficiently allege failure of purpose. *See MacDougall v. Am. Honda Motor Co., Inc.*, 2023 WL 9687349, at *11 (C.D. Cal. Oct. 3, 2023).

### 4.    There is no notice requirement in express warranty claims.

Contrary to FCA's representations, the notice requirement does not apply to express

---

[19] FCA's remaining citations concerning repair attempts under the Song-Beverly Act are irrelevant as they relate to violations of the 30-day repair clause, which Plaintiffs do not invoke.

1   warranty claims in "actions by injured consumers against manufacturers with whom they have not

2   dealt." *Arakelian*, 2018 WL 6422649, at *3; *see also* § E(3), *infra*.

3           **E.      The implied warranty claims are also well-pled (Counts VII and VIII).**

4           FCA's implied warranty arguments fail because (1) the Trucks were unmerchantable at

5   the time of sale, (2) privity is not required, and (3) pre-suit notice was not required.

6                   **1.      Plaintiffs advance a viable theory of unmerchantability.**

7           Plaintiffs allege that FCA breached the implied warranty of merchantability under the

8   UCC and Song-Berly Act because at the time of sale, the Class Trucks were not legal to sell or

9   drive. CAC ¶¶ 126, 153, 324, 331, 342, 344. Plaintiffs also allege breach of merchantability under

10  the Song-Berly Act based on mislabeling and failure to conform with labels affirming the

11  vehicles' compliance with applicable California regulations. *Id.*

12          Relying primarily on *Benipayo v. Volkswagen Grp. of Am., Inc.*, 2020 WL 553884 (N.D.

13  Cal. Feb. 4, 2020), FCA argues that illegality cannot render a vehicle unfit and that "mislabeling

14  alone cannot render a product unmerchantable." FCA MTD at 20. In *Benipayo*, the court relied on

15  the government's determination that the vehicles were legal to drive *after* the defeat devices came

16  to light. *Benipayo*, 2020 WL 553884 at *5. But the relevant period in a merchantability claim is

17  the time of purchase—not after. *See, e.g.*, *Cunningham v. Ford Motor Co.*, 2015 WL 13764982,

18  at *3 (S.D. Cal. Dec. 7, 2015) (question is whether plaintiff "sufficiently alleged that a defect

19  existed . . . at the time of sale[.]"). And there is no question that the vehicles in *Benipayo* were not

20  legal to sell or drive at the time of sale. 40 C.F.R § 86.1809-10 (prohibiting sale of vehicles

21  equipped with defeat device); Cal. Veh. Code § 27156 (illegal to operate vehicle with incorrectly

22  installed or inoperable pollution control device). The same is true here.

23          As to labeling, the Song-Berly Act is clear: a consumer good breaches the implied

24  warranty of merchantability if it is not "adequately contained, packaged, and labeled" or does not

25  "[c]onform to the promises or affirmations of fact made on the container or label." *See* Cal. Civ.

26  Code § 1791.1(a); *Riley v. Volkswagen Grp. of Am., Inc.*, 2022 WL 17829997, at *1 (9th Cir.

27  Dec. 21, 2022) (finding district court erred in rejecting claims on the basis that "mislabeling alone

28  cannot render a product unmerchantable"); *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 855

1    (N.D. Cal. 2018). Plaintiffs' allegations easily meet this standard.[20]

2    **2.    There is no privity requirement for the implied warranty claims.**

3    Vertical privity is not required for implied warranty claims under either Song-Beverly or

4    the UCC. By its plain terms, the Song-Beverly Act requires an implied warranty by both

5    manufacturers and retailers. Cal. Civ. Code § 1792. For the UCC, California district courts have

6    repeatedly found that privity is not required when the plaintiff is the third-party beneficiary of a

7    manufacturer's warranty. *See, e.g.*, *In re Nexus 6P*, 293 F. Supp. 3d at 923; *Keegan v. Am. Honda*

8    *Motor Co.*, 838 F. Supp. 2d 929, 947 (C.D. Cal. 2012); *Mosqueda*, 443 F. Supp. 3d at 1128-29;

9    *Luong v. Subaru of Am., Inc.*, 2018 WL 2047646, at *8 (N.D. Cal. May 2, 2018); *Zeiger*, 304 F.

10    Supp. 3d at 854. FCA relies on *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir.

11    2008), but, as recognized in *In re MyFord Touch*, *Clemens* did not address the third-party

12    beneficiary exception. 46 F. Supp. 3d at 983-84. While some courts, like *Smith v. Intel Corp.*,

13    2024 WL 3834706, at *9 (N.D. Cal. Aug. 15, 2024), have hewed closely to the *Clemens* decision,

14    this is the minority and less well-reasoned position. *See In re Seagate Tech. LLC Litig.*, 233 F.

15    Supp. 3d 776, 787 (N.D. Cal. 2017) (recognizing the "majority of district court decisions to

16    consider the question" have recognized the third-party beneficiary exception).

    **3.    There is no notice requirement either.**

17    Finally, in California, there is no notice requirement "in actions by injured consumers

18    against manufacturers with whom they have not dealt." *Greenman v. Yuba Power Prods., Inc.*, 59

19    Cal. 2d 57, 61 (1963); *see also In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1103 (N.D. Cal. 2015)

20    (California district courts "have routinely held that plaintiffs are not required to provide pre-suit

21    notice to a remote [manufacturer] . . . ."); *Mason v. Nature's Innovation, Inc.*, 2013 WL 1969957,

22    at *6 (S.D. Cal. May 13, 2013) (applying *Greenman* to implied warranty); *Aaronson v. Vital*

23    *Pharms., Inc.*, 2010 WL 625337, at *5 (S.D. Cal. Feb. 17, 2010) (same). FCA's authority,

24    *Alvarez v. Chevron Corp.*, involved a suit brought by gas retail customers *directly* against the

25    sellers. 656 F.3d 925, 932 (9th Cir. 2011). Likewise, in *Minkler v. Apple, Inc.*, the plaintiff's

26    allegations of "'direct dealings' with Apple" and purchase of the defective product "from Apple

27    and/or Apple authorized retailers" removed the case from the manufacturer exception. 65 F.

28    _____

[20] In any event both *Benpiayo* and *Riley* were decided on a full record at summary judgment.

1    Supp. 3d 810, 817 (N.D. Cal. 2014). Because notice is not required in a case, like this one, against

2    manufacturers with no direct dealings with Plaintiffs, FCA's timeliness arguments are moot.

3         **F.    Unjust enrichment is a viable claim pled in the alternative (Count XI).**

4         Courts applying California law allow independent claims for unjust enrichment. *Bruton v.*

5    *Gerber Prods. Co.*, 703 F. App'x. 468, 470 (9th Cir. 2017) (recognizing unjust enrichment as an

6    independent claim under California law); *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th

7    988, 1000 (2015); *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016); *Monet*

8    *v. Chase Home Fin., LLC*, 2010 WL 2486376 (N.D. Cal. June 16, 2010). FCA is wrong to claim

9    that express warranty claims preclude an unjust enrichment claim. "[A] claim for [unjust

10   enrichment] is permitted even if the party inconsistently pleads a breach of contract claim that

11   alleges the existence of an enforceable agreement." *Takeya USA Corp. v. PowerPlay Mktg. Grp.,*

12   *LLC*, 2022 WL 17357781, at *17 (C.D. Cal. Sept. 1, 2022).

13        FCA's argument regarding adequacy of remedies also fails. There is "no basis in

14   California or federal law for prohibiting the plaintiffs from pursuing their equitable claims in the

15   alternative to legal remedies at the pleadings stage." *Lomeli v. Jackson Hewitt, Inc*., 2018 WL

16   1010268, at *7 (C.D. Cal. Feb. 20, 2018). Equally unavailing is FCA's contention that Plaintiffs'

17   unjust enrichment claim is duplicative of other claims. FCA MTD at 23. *Marek v. Molson Coors*

18   *Beverage Co.*, 580 F. Supp. 3d 848, 862 (N.D. Cal. 2022) ("The argument that unjust enrichment

19   claims must be dismissed as duplicative of other claims[] has been rejected by the Ninth

20   Circuit."). Plaintiffs' unjust enrichment claim is valid and well-pled.

21                                **CONCLUSION**

22        Plaintiffs respectfully request that the Court deny FCA's Motion to Dismiss.

23   Dated: November 25, 2024              Respectfully submitted,

24                                         */s/  David S. Stellings*
                                          David S. Stellings, *pro hac vice*
25                                         **LIEFF CABRASER HEIMANN & BERNSTEIN,**
                                          **LLP**
26                                         250 Hudson Street, 8th Floor
                                          New York, NY 10013-1413
27                                         Telephone: 212.355.9500
                                          dstellings@lchb.com
28

1    Elizabeth J. Cabraser (SBN 083151)
     Kevin Budner (SBN 287271)
2    Phong-Chau G. Nguyen (SBN 286789)
     **LIEFF CABRASER HEIMANN & BERNSTEIN,**
3    **LLP**
     275 Battery Street, 29th Floor
4    San Francisco, CA 94111
     Telephone: 415.956.1000
5    Facsimile: 415.956.1008
     ecabraser@lchb.com
6    kbudner@lchb.com
     pgnguyen@lchb.com
7
     Hannah R. Lazarz, *pro hac vice*
8    **LIEFF CABRASER HEIMANN & BERNSTEIN,**
     **LLP**
9    222 2nd Avenue South, Suite 1640
     Nashville, TN 37201
10   Telephone: 615.313.9500
     hlazarz@lchb.com
11
     Roland Tellis (SBN 186269)
12   David B. Fernandes, Jr. (SBN 280944)
     Adam M. Tamburelli (SBN 301902)
13   **BARON & BUDD, P.C.**
     15910 Ventura Boulevard, Suite 1600
14   Encino, California 91436
     Telephone: 818-839-2333
15   rtellis@baronbudd.com
     dfernandes@baronbudd.com
16   atamburelli@baronbudd.com
17   Steve W. Berman
     **HAGENS BERMAN SOBOL SHAPIRO LLP**
18   1301 Second Avenue, Suite 2000
     Seattle, WA 98101
19   Telephone: (206) 623-7292
     steve@hbsslaw.com
20
     James E. Cecchi, *pro hac vice*
21   **CARELLA, BYRNE, CECCHI,**
     **BRODY & AGNELLO, P.C.**
22   5 Becker Farm Road
     Roseland, NJ 07068
23   Telephone: (973) 994-1700
     jcecchi@carellabyrne.com
24
     Christopher A. Seeger, *pro hac vice*
25   Christopher Ayers, *pro hac vice*
     **SEEGER WEISS LLP**
26   77 Water Street
     New York, NY 10005
27   Telephone: (212) 584-0700
     cseeger@seegerweiss.com
28   cayers@seegerweiss.com

PLTFS' OPP. TO FCA'S MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINT
CASE NO. 3:23-CV-06640-JSC

Joseph F. Rice
Ann K. Ritter
Lance V. Oliver, *pro hac vice*
**MOTLEY RICE LLC**
28 Bridgeside Boulevard
Mount Pleasant, South Carolina 29464
Phone: (843) 216-9000
Fax: (843) 216-9450
jrice@motleyrice.com
aritter@motleyrice.com
loliver@motleyrice.com

Rosemary M. Rivas (SBN 209147)
Amy M. Zeman (SBN 273100)
Rosanne L. Mah (SBN 242628)
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
rmr@classlawgroup.com
amz@classlawgroup.com
rlm@classlawgroup.com

*Counsel for Plaintiffs*

- 27 -