Joshua H. Lerner (SBN 220755)
*joshua.lerner@wilmerhale.com*
WILMER CUTLER PICKERING
HALE AND DORR LLP
1 Front Street, Suite 3500
San Francisco, California 9411
Tel: (628) 235-1124

Alan Schoenfeld (*pro hac vice*)
*alan.schoenfeld@wilmerhale.com*
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Tel: (212) 937-7294

Ronald Machen (*pro hac vice*)
*ronald.machen@wilmerhale.com*
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, District of Columbia
20037
Tel: (202) 663-6881

*Attorneys for Defendant Cummins Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK BIEDERMAN, JOSEPH GAMBA, TREVOR WHITEHOUSE, GARY AGOSTINI, JEFFREY HETTINGER, JILL SCOTT, CARL ANDERS TROEDSSON, MICHAEL CAPPA, FRED CHAPMAN, and DUSTEN ACKER, on behalf of themselves and all others similarly situated, | Case No. 3:23-cv-06640-JSC |
| | **DEFENDANT CUMMINS INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** |
| Plaintiffs, | |
| vs. | Hon. Jacqueline Scott Corley |
| FCA US LLC, a Delaware corporation, and CUMMINS INC., an Indiana corporation, | Hearing Date:  January 16, 2025 Time:  10:00 a.m. Courtroom:  8 |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..........................................................................................................1

ARGUMENT ...............................................................................................................1

I.    PLAINTIFFS' RICO CLAIMS FAIL (COUNT I) ..............................................1

    A.    Plaintiffs Lack Standing To Assert Their RICO Claims .........................1

    B.    Plaintiffs Fail To Adequately Plead An Enterprise.................................5

II.   PLAINTIFFS' UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED (COUNT XI)...............6

III.  PLAINTIFFS LACK STANDING TO ASSERT NATIONWIDE-CLASS FRAUDULENT
     CONCEALMENT CLAIMS (COUNT II) ...........................................................8

IV.   PLAINTIFFS' CONSUMER PROTECTION AND FRAUDULENT CONCEALMENT CLAIMS
     SHOULD BE DISMISSED IN PART (COUNTS II, III, IV, IX) .................................10

    A.    Plaintiffs' Claims Should Be Dismissed To The Extent They Rely On Non-
        Actionable Puffery ..............................................................................10

    B.    Federal Law Preempts Plaintiffs' Claims Based On Representations Of
        Regulatory Compliance .......................................................................12

CONCLUSION ..........................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Amalgamated Association of Street, Electric Railway and Motor Coach Employees v.*
   *Lockridge*,
   403 U.S. 274 (1971)..................................................................................................14

*Apple, Inc. v. Pepper*,
   587 U.S. 273 (2019)............................................................................................2, 3, 5

*Arizona v. United States*,
   567 U.S. 387 (2012)............................................................................................14, 15

*Augustine v. Talking Rain Beverage Co., Inc.*,
   386 F. Supp. 3d 1317 (S.D. Cal. 2019)...................................................................10

*Babaian v. Dunkin' Brands Group., Inc.*,
   2018 WL 11445613 (C.D. Cal. June 12, 2018) ........................................................7

*Bledsoe v. FCA US LLC*,
   663 F. Supp. 3d 753 (E.D. Mich. 2023)....................................................................3

*Bracco Diagnostics, Inc. v. Amersham Health, Inc.*,
   7627 F. Supp. 2d 384 (D.N.J. 2009) .......................................................................12

*Buckman Co. v. Plaintiffs' Legal Committee*,
   531 U.S. 341 (2001)............................................................................................13, 14

*California Federal Bank v. Matreyek*,
   10 Cal. Rptr. 2d 58 (Ct. App. 1992).........................................................................8

*Carpenter v. PetSmart*,
   441 F. Supp. 3d 1028 (S.D. Cal. 2020)...................................................................10

*Carter v. Berger*,
   777 F.2d 1173 (7th Cir. 1985) ..........................................................................2, 3, 4

*City of Modesto Redevelopment Agency v. Dow Chemical Co.*,
   2005 WL 1171988 (Cal. Super. Ct. Apr. 11, 2005)................................................14

*ESG Cap. Partners, LP v. Stratos*,
   828 F.3d 1023 (9th Cir. 2016) ..................................................................................6

*Fenner v. General Motors, LLC*,
   121 F.4th 1117 (6th Cir. 2024) ...............................................................................13

*Fenner v. General Motors, LLC*,
  113 F.4th 585 (6th Cir. 2024) ..........................................................1, 2, 12, 13, 14

*Francis v. General Motors, LLC*,
  504 F. Supp. 3d 659 (E.D. Mich. 2020)..................................................................8

*Gamboa v. Ford Motor Co.*,
  381 F. Supp. 3d 853 (E.D. Mich. 2019)................................................................11

*General Motors, LLC v. FCA US, LLC*,
  44 F.4th 548 (6th Cir. 2022) ...................................................................................3

*Gold v. Lumber Liquidators, Inc.*,
  2015 WL 7888906 (N.D. Cal. Nov. 30, 2015) ......................................................12

*Gomez v. Guthy-Renker, LLC*,
  2015 WL 4270042 (C.D. Cal. July 13, 2015) ..........................................................5

*Graham v. Central Garden & Pet Co.*,
  2023 WL 2744391 (N.D. Cal. Mar. 30, 2023)........................................................12

*Griffin v. Publix Super Markets, Inc.*,
  2024 WL 2318143 (M.D. Fla. May 22, 2024)..........................................................7

*Hadley v. Kellogg Sales Co.*,
  273 F. Supp. 3d 1052 (N.D. Cal. 2017) ................................................................12

*Hawkins v. Shimano N. American Bicycle Inc.*,
  729 F. Supp. 3d 989 (C.D. Cal. 2024) .....................................................................6

*Hindsman v. General Motors LLC*,
  2018 WL 2463113 (N.D. Cal. June 1, 2018) ...........................................................9

*Hirsch v. Bank of America*,
  132 Cal. Rptr. 2d 220 (Ct. App. 2003)......................................................................8

*Horti v. Nestle HealthCare Nutrition, Inc.*,
  2022 WL 2441560 (N.D. Cal. July 5, 2022).............................................................7

*Humana, Inc. v. Indivior, Inc.*,
  2022 WL 17718342 (3d Cir. Dec. 15, 2022) ............................................................2

*In re Cardizem CD Antitrust Litigation*,
  105 F. Supp. 2d 618 (E.D. Mich. 2000)....................................................................8

*In re Chrysler-Dodge-Jeep Ecodiesel Marketing, Sales Practices, & Products Liability
  Litigation*,
  295 F. Supp. 3d 927 (N.D. Cal 2018) .........................................3, 7, 9, 11, 13, 14

*In re: EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices, & Antitrust Litigation*,
  336 F. Supp. 3d 1256 (D. Kan. 2018) ...................................................................................3

*In re Ford Motor Co. F-150 & Ranger Truck Fuel Economy Marketing & Sales Practices
  Litigation*,
  65 F.4th 851 (6th Cir. 2023) ....................................................................................12, 14

*In re Jamster Marketing Litigation*,
  2009 WL 1456632 (S.D. Cal. May 22, 2009) .......................................................................5

*In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*,
  2021 WL 3371938 (S.D.N.Y. Aug. 3, 2021) .......................................................................11

*In re Toshiba Am. HD DVD Marketing & Sales Practices Litigation*,
  2009 WL 2940081 (D.N.J. Sept. 11, 2009) ...........................................................................7

*In re Volkswagen "Clean Diesel" Marketing, Sales Pratices, & Products Liability Litigation*,
  349 F. Supp. 3d 881 (N.D. Cal. 2018) ..............................................................3, 11, 13, 14

*J & M Turner, Inc. v. Applied Bolting Technology Products, Inc.*,
  1997 WL 83766 (E.D. Pa. Feb. 19, 1997) .............................................................................3

*Jones v. Micron Technology Inc.*,
  400 F. Supp. 3d 897 (N.D. Cal. 2019) ..................................................................................9

*Kansas v. UtiliCorp United, Inc.*,
  497 U.S. 199 (1990) ...............................................................................................................4

*Klein v. Ljubljana Inter Auto d.o.o.*,
  2022 WL 16859589 (C.D. Cal. Aug. 2, 2022) ...............................................................11, 12

*Lectrodryer v. SeoulBank*,
  77 Cal. App. 4th 723 (2000) ..................................................................................................7

*McCarthy v. Recordex Service, Inc.*,
  80 F.3d 842 (3d Cir. 1996) ............................................................................................2, 3, 4

*McClellan v. I-Flow Corp.*,
  776 F.3d 1035 (9th Cir. 2015) .............................................................................................13

*Melendres v. Arpaio*,
  784 F.3d 1254 (9th Cir. 2015) ...........................................................................................1, 8

*Naimi v. Starbucks Corp.*,
  798 F. App'x 67 (9th Cir. 2019) ............................................................................................7

*Plotts v. American Honda Motor Company, Inc.*,
  2023 WL 4843342 (C.D. Cal. June 9, 2023) .......................................................................10

*Raymo v. FCA US LLC*,
    475 F. Supp. 3d 680 (E.D. Mich. 2020)................................................................11

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993)................................................................................................5

*Rickman v. BMW of North America*,
    2020 WL 3468250 (D.N.J. June 25, 2020) ...........................................................4

*Rigo Amavizca v. Nutra Manufacturing, LLC*,
    2021 WL 682113 (C.D. Cal. Jan. 27, 2021) ........................................................10

*Ruiz v. Celsius Holdings, Inc.*,
    2021 WL 5811264 (S.D. Cal. July 28, 2021) ........................................................7

*Sedima, S.P.R.L. v. Imrex Co.*,
    473 U.S. 479 (1985)............................................................................................3, 4

*Shaw v. Nissan North America, Inc.*,
    220 F. Supp. 3d 1046 (C.D. Cal. 2016) .................................................................5

*Sidhu v. Bayer Healthcare Pharmaceuticals, Inc.*,
    2023 WL 6541865 (N.D. Cal. Oct. 5, 2023)..........................................................9

*Soo v. Lorex Corp.*,
    2020 WL 5408117 (N.D. Cal. Sept. 9, 2020) ....................................................9, 10

*Sundance Land Corp. v. Community First Federal Savings & Loan Association*,
    840 F.2d 653 (9th Cir. 1988) .................................................................................4

*Treuhaft v. Mercedes-Benz USA, LLC*,
    2021 WL 2864877 (C.D. Cal. July 6, 2021)....................................................11, 12

*Trollinger v. Tyson Foods, Inc.*,
    370 F.3d 602 (6th Cir. 2004) .............................................................................2, 3

*Uzyel v. Kadisha*,
    116 Cal. Rptr. 3d 244 (Ct. App. 2010)...................................................................8

*Vernon v. Qwest Communications International, Inc.*,
    643 F. Supp. 2d 1256 (W.D. Wash. 2009) .............................................................6

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ...............................................................................6

**DOCKETED CASES**

*United States v. Cummins Inc.*,
    No. 1:24-cv-00090-APM (D.D.C. Mar. 21, 2024) ...............................................5

## STATUTES, RULES, AND REGULATIONS

Fed. R. Civ. P. 12(b)(6) ...................................................................................................10

Fed. R. Civ. P. 8(a) .................................................................................................1, 6, 7

Fed. R. Civ. P. 9(b) .................................................................................................1, 6, 7

15 U.S.C. § 15 .................................................................................................................2

18 U.S.C. § 1964(c) ........................................................................................................2

42 U.S.C. § 7522(a)(1) ...................................................................................................6

42 U.S.C. § 7543 ...........................................................................................................13

   § 7543(a) .................................................................................................12, 14, 15

   § 7543(b) ..............................................................................................................15

16 C.F.R. § 260 .............................................................................................................11

   § 260.3 ..................................................................................................................11

   § 260.4 ..................................................................................................................11

40 C.F.R. § 86.1848-10(c) ............................................................................................13

## OTHER AUTHORITIES

EPA, Office of Inspector General Volkswagen Report (May 15, 2018) .......................5

**INTRODUCTION**

Cummins's targeted motion to dismiss should be granted. Plaintiffs' opposition attempts to sidestep Cummins's tailored arguments by mischaracterizing the relief that Cummins seeks and diverting the Court's attention to issues irrelevant to its motion. On the RICO claim, Plaintiffs herald that the Supreme Court and Ninth Circuit have not applied the indirect purchaser rule to RICO, but fail to acknowledge that every Circuit to have actually considered the issue has done so. On the unjust enrichment claim, Plaintiffs incorrectly disclaim Rule 9(b)'s application, but fail to address that even under Rule 8(a)'s lower standard, Plaintiffs are required—and fail—to specify a price premium. On standing for their nationwide fraudulent concealment claim, Plaintiffs rely entirely on a distinguishable Ninth Circuit decision, *Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015), where the named plaintiffs only brought claims under their home state law, and not under the law of jurisdictions where they admittedly suffered no injury. On the non-actionable puffery identified in Cummins's motion, Plaintiffs fail to engage with the particular representations that Cummins targeted for preclusion. And on preemption, Plaintiffs draw an artificial distinction between claims premised on fraud on consumers and fraud on regulators, a distinction belied both by on point case law—*Fenner v. General Motors, LLC*, 113 F.4th 585 (6th Cir. 2024)—and Plaintiffs' own Complaint.

Throughout their opposition, Plaintiffs also repeatedly invoke the consent decree as if it proves their case. But, in its settlement with the government, Cummins expressly denied the regulators' allegations and admitted no liability. Cummins's motion to dismiss seeks to narrow this case so that the parties can litigate the core claims that Plaintiffs have plausibly alleged. Plaintiffs' attempt to obscure the facial weakness of certain of their claims does not productively move the case forward and should be rejected.

**ARGUMENT**

**I.    PLAINTIFFS' RICO CLAIMS FAIL (COUNT I)**

**A.    Plaintiffs Lack Standing To Assert Their RICO Claims**

Plaintiffs purchased their trucks from dealerships and therefore are indirect purchasers who lack standing to bring RICO claims against Cummins. Plaintiffs nonetheless offer four

1    unpersuasive arguments against the straightforward application of this principle in this case.

2        *First*, Plaintiffs assert that neither the Supreme Court nor the Ninth Circuit has applied

3    *Illinois Brick*'s indirect-purchaser rule to a RICO case.  Opp. 5.  But neither court has considered

4    the question.  The indirect-purchaser rule is "a bright-line rule" as applied to the antitrust

5    statutes, *Apple, Inc. v. Pepper*, 587 U.S. 273, 279 (2019), and RICO's civil suit provision and

6    the antitrust statutes use nearly identical language.  *Compare* 18 U.S.C. § 1964(c), *with* 15

7    U.S.C. § 15.  The indirect-purchaser rule thus applies to RICO, and every circuit that has

8    considered the question has agreed.  *Fenner*, 113 F.4th at 604; *McCarthy v. Recordex Serv., Inc.*,

9    80 F.3d 842, 855 (3d Cir. 1996); *Carter v. Berger*, 777 F.2d 1173, 1176 (7th Cir. 1985).

10        Plaintiffs attempt to brush off this body of case law as dicta or factually distinct, but it

11    cannot be so easily disparaged.  Opp. 8-9.  In *McCarthy*, the court specifically held that "[t]he

12    precepts taught by *Illinois Brick* and *Utilicorp* apply to RICO claims, thereby denying RICO

13    standing to indirect victims" and thus determined that "the central and dispositive issue is

14    whether plaintiffs are 'direct purchasers.'"  80 F.3d at 855.  Determining that *Illinois Brick*

15    applied to RICO was a necessary step in the court's analysis and thus cannot be dicta.  Far from

16    rejecting *McCarthy* (Opp. 8), the Third Circuit has since reiterated that the indirect-purchaser

17    rule applies to RICO cases, noting that the same policy concerns apply to both statutes.  *See*

18    *Humana, Inc. v. Indivior, Inc.*, 2022 WL 17718342, at *3 (3d Cir. Dec. 15, 2022).

19        Plaintiffs also dismiss application of the indirect-purchaser rule in *Trollinger v. Tyson*

20    *Foods, Inc.*, 370 F.3d 602, 616 (6th Cir. 2004), and subsequent Sixth Circuit cases as dicta with

21    "little meaningful analysis."  Opp. 9.  In *Trollinger*, the court's finding that the plaintiffs were

22    employees akin to "direct purchasers" was an application of the clear rule it announced:

23    "indirect purchasers lack standing under RICO."  *Id.* at 616.  All of the Sixth Circuit cases

24    following *Trollinger* understood this "bright-line rule," *Apple*, 587 U.S. at 279, and thus there

25    was no need for any "meaningful analysis."

26        Plaintiffs likewise attempt to distinguish *Carter* by pointing to the court's statement that

27    "the directly injured party should receive a complete recovery."  777 F.2d at 1176.  In *Carter*,

28    taxpayers brought a RICO lawsuit against a defendant who had committed tax evasion.  In

dismissing the claim, the court announced the general principle that, under *Illinois Brick*, only the "directly injured party" could sue. *Id.* at 1178. In the simple case of a commercial sale, *Carter* was clear that the "directly injured party" would be the direct purchaser, not the indirect purchaser. *Id.* at 1175. Plaintiffs' case is the simple one: indirect purchasers attempting to sue under RICO. *See Bledsoe v. FCA US LLC*, 663 F. Supp. 3d 753, 785 (E.D. Mich. 2023).

*Second*, Plaintiffs claim that some district courts have not dismissed RICO claims in factually analogous cases. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 349 F. Supp. 3d 881 (N.D. Cal. 2018) ("*VW Clean Diesel*"); *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, 295 F. Supp. 3d 927 (N.D. Cal 2018) ("*EcoDiesel*"). But neither case addresses the application of *Illinois Brick* because the defendants did not raise the issue in either. Instead, they address RICO's distinct proximate cause and directness requirement. While "[s]tanding poses a threshold question involving constitutional, prudential, and … statutory limit[s] on who may sue," "[p]roximate cause poses a merits question involving common-law and prudential limitations on the consequences for which the law will hold a defendant accountable." *Trollinger*, 370 F.3d at 612; *see also McCarthy*, 80 F.3d at 857. As a result, "a RICO case with a derivative-injury problem is better suited to dismissal on the pleadings than a RICO case with a traditional proximate-cause problem." *Trollinger*, 370 F.3d at 615. The proximate cause cases cited by Plaintiffs (Opp. 7-8) are thus entirely consistent with the application of the indirect-purchaser rule here.[1]

*Third*, Plaintiffs claim that the Supreme Court and the Ninth Circuit have established that antitrust requirements do not apply to RICO. Opp. 6. But the cases Plaintiffs rely upon do not stand for such a broad principle. In *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985), the

---

[1]    Similarly, the cases that Plaintiffs point to as examples of "better reasoning" in the application of the indirect-purchaser rule either conflate the rule with proximate cause or do not address it at all. *See In re: EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 336 F. Supp. 3d 1256, 1324-1325 (D. Kan. 2018) (RICO plaintiff has standing if they have pleaded proximate causation); *J & M Turner, Inc. v. Applied Bolting Tech. Prods., Inc.*, 1997 WL 83766, at *10 (E.D. Pa. Feb. 19, 1997) (applying "general principles of proximate causation to determine whether [the plaintiff] has alleged a sufficiently direct injury to confer RICO standing"); *General Motors, LLC v. FCA US, LLC*, 44 F.4th 548, 561 (6th Cir. 2022) (finding that proximate cause was not satisfied, rather than addressing the standing question).

3

Supreme Court "held that the 'antitrust injury' rule of antitrust does not apply to RICO … because 'RICO injury' would be an unintelligible requirement, not because there is no parallel between the two statutes." *Carter*, 777 F.2d at 1176. The Court in *Sedima* determined that an "amorphous 'racketeering injury' requirement" would make little sense because RICO already defines a list of predicate racketeering acts. *Sedima,* 473 U.S. at 495. RICO, however, does not otherwise address indirect-purchase standing, and thus there is no reason to second-guess the natural application of *Illinois Brick* to RICO's damages provision, which is "practically verbatim the damages provision in the antitrust laws." *Carter*, 777 F.2d at 1175-76; *see also Sedima*, 473 U.S. at 489 n.8 (commenting on Congress's reliance on the antitrust statutes when drafting RICO). In the other case Plaintiffs rely upon, *Sundance Land Corp. v. Community First Federal Savings & Loan Association*, the question of RICO standing was not argued, yet the court still observed that it was "by no means clear that [the indirect-purchaser plaintiff] has standing to raise a RICO claim," before dismissing on the merits. 840 F.2d 653, 666 n.15 (9th Cir. 1988).

Nor is it true that "antitrust principles [] do not align with the broad purposes of RICO." Opp. 6. The indirect-purchaser rule serves "to eliminate the complications of apportioning overcharges between direct and indirect purchasers" while ensuring that defendants cannot pass on liability in cases brought by direct purchasers, thereby diluting the law's deterrent effect. *See Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 208 (1990). Those same concerns animate the application of *Illinois Brick* to RICO claims. *See, e.g.*, *McCarthy*, 80 F.3d at 855 ("antitrust standing principles apply equally to allegations of RICO allegations"); *Rickman v. BMW of N. Am.*, 2020 WL 3468250, at *8 (D.N.J. June 25, 2020) ("the indirect purchaser rule prevents defendants from being exposed to 'multiple liability' should both indirect and direct purchasers in a distribution chain be permitted to assert claims arising out of a single overcharge"). And, regardless, "the bright-line rule of *Illinois Brick* means that there is no reason to ask whether the rationales of Illinois Brick 'apply with equal force' in every individual case." *Apple*, 587 U.S. at 285 (quoting *Utilicorp*, 497 U.S. at 216).

*Finally*, Plaintiffs recite the familiar refrain that RICO should be construed liberally. But RICO's remedial purposes are "not an invitation to apply RICO to new purposes that Congress

never intended." *Reves v. Ernst & Young*, 507 U.S. 170, 183-184 (1993).  Instead, Congress's intent "must be gleaned from the statute through the normal means of interpretation." *Id.*  Here, RICO's text follows that of the antitrust statute and thus restricts indirect-purchaser standing.

### B.    Plaintiffs Fail To Adequately Plead An Enterprise

Because Plaintiffs' allegations describe "ordinary business conduct and an ordinary business purpose," they fail to satisfy RICO's "common purpose" requirement.  *In re Jamster Mktg. Litig.*, 2009 WL 1456632, at *5 (S.D. Cal. May 22, 2009).  Plaintiffs' only response is that the "common purpose" was fraud.  Opp. 10.  But courts regularly find threadbare allegations of fraud an insufficient common purpose for a RICO enterprise.  *See, e.g.*, *In re Jamster Mktg. Litig.*, 2009 WL 1456632, at *5 ("Plaintiffs cannot meet their particularized pleading burden by artfully inserting modifiers such as 'unauthorized charges' or 'fraudulently collecting monies' in an attempt to show a common purpose."); *Gomez v. Guthy-Renker, LLC*, 2015 WL 4270042, at *11 (C.D. Cal. July 13, 2015) ("The substantive requirements for RICO liability cannot be circumvented through sophistic pleading practices.").  Plaintiffs must provide more, like "specific communications showing the defendants acting as an enterprise and engaged in a collaborative scheme to defraud." *Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1057 (C.D. Cal. 2016).  Here, Plaintiffs fail to plead anything resembling such detail, even after receiving copies of Cummins's productions to the regulators that included communications between FCA and Cummins.

Instead, Plaintiffs point to the settlement that Cummins entered into with the EPA.  But Cummins expressly denied the EPA's allegations and did not admit any liability when entering into the agreement.  Consent Decree at 3, *United States v. Cummins Inc.*, No. 1:24-cv-00090-APM (D.D.C. Mar. 21, 2024).  And, in any event, the agreement was premised upon alleged statutory and regulatory violations of the CAA that did not require intentional conduct of any sort, let alone fraudulent intent.  *See* 42 U.S.C. § 7522(a)(1) (prohibiting the sale of any new motor vehicle not "covered by a certificate of conformity" as a matter of strict liability); EPA, Office of Inspector General Volkswagen Report (May 15, 2018) ("[T]he presence of an illegal defeat device does not always a signal an intent to deceive or cheat (*i.e.*, fraud).").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**II.    PLAINTIFFS' UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED (COUNT XI)**

Plaintiffs' unjust enrichment claim is derivative of their fraud claims and thus governed by Rule 9(b).  Because Plaintiffs do not contest that their allegations fail under Rule 9(b), dismissal is required on that basis alone.  But there is more.  Plaintiffs' failure to specify the price premium they paid, or how Cummins obtained such premium, fails to satisfy even notice pleading standards.  Plaintiffs offer three responses, none of which addresses these deficiencies.

*First*, Plaintiffs argue that that their unjust enrichment claim need not satisfy Rule 9(b)'s heightened pleading standard because it is premised only on the presence of "unauthorized emission control devices."  Opp. 12.  But Plaintiffs' own authorities establish that when a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim … the claim is said to be 'grounded in fraud' or to 'sound in fraud,'" and is thus subject to Rule 9(b).  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-1104 (9th Cir. 2003); *see also Hawkins v. Shimano N. Am. Bicycle Inc.*, 729 F. Supp. 3d 989, 1013 (C.D. Cal. 2024) ("A claim that does not contain an element of fraud may nonetheless be subject to Rule 9(b)'s particularity mandate if it 'sounds in fraud.'").[2]

That is precisely the case here.  Plaintiffs' unjust enrichment claim is premised on the following allegation: "Plaintiffs … conferred a benefit on Defendants by overpaying for Class Trucks at prices that were artificially inflated by *Defendants' misrepresentations, concealment, and omissions alleged above* regarding the Class Trucks, their true emissions, and the Defeat Devices therein."  Compl. ¶ 384 (emphasis added).  In short, Plaintiffs allege that Cummins obtained an unjust benefit through "fraud and deception."  Compl. ¶ 385.  Plaintiffs now claim that "even if Cummins never made any statement about its engines, the unjust enrichment claim[] would stand."  Opp. 12.  But under Plaintiffs' own theory, if Cummins had never made any statement about its engines, then it never would have enticed consumers into purchasing

---

[2]    Plaintiffs' other authorities demonstrate the same point.  *See Vernon v. Qwest Commc'ns Int'l, Inc.*, 643 F. Supp. 2d 1256, 1265 (W.D. Wash. 2009) (Rule 9(b) did not apply to unjust enrichment claim because plaintiffs did not "allege[] fraud as an element of their consumer protection act claims" upon which it was based); *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1032 (9th Cir. 2016) (subjecting "nonfraud" unjust enrichment claims to Rule 8(a)(2)).

their RAM vehicles.  There would be no reliance on false representations of the engine's cleanliness or performance and thus no "unjust retention" of a "benefit at the expense of another."  *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000).

*Second*, Plaintiffs claim that there is no requirement to specify a price premium under Rule 8(a).  This argument is irrelevant because, again, Plaintiffs' claim is properly subject to Rule 9(b).  In any case, Plaintiffs' failure to specify a price premium fails to satisfy even ordinary notice pleading requirements.  In fact, several of the authorities Cummins cited for this point are Article III injury-in-fact decisions decided under Rule 8(a).  *See, e.g.*, *Babaian v. Dunkin' Brands Grp., Inc.*, 2018 WL 11445613, at *6-7 (C.D. Cal. June 12, 2018); *Horti v. Nestle HealthCare Nutrition, Inc.*, 2022 WL 2441560, at *8 (N.D. Cal. July 5, 2022); *In re Toshiba Am. HD DVD Mktg. & Sales Pracs. Litig.*, 2009 WL 2940081, at *13 (D.N.J. Sept. 11, 2009); *Griffin v. Publix Super Mkts., Inc.*, 2024 WL 2318143, at *2 (M.D. Fla. May 22, 2024).[3]

Plaintiffs claim that *EcoDiesel* sustained "similar claims [regarding a price premium] on the same basis" as Plaintiffs' unjust enrichment claim.  Opp. 12.  But in *EcoDiesel*, the court held that plaintiffs' allegations they "paid between $3,120 and $5,000 more for the EcoDiesel option than for the comparable gasoline vehicles" was sufficient.  *EcoDiesel*, 295 F. Supp. 3d at 961.  Here, by contrast, Plaintiffs do not quantify their alleged overpayment.  Nor do they even explain how such overpayment would be calculated.  At most, they point out there is a price discrepancy between the price of gas and diesel vehicles, Compl. ¶¶ 8, 185—yet they never allege that they received the equivalent of a gas vehicle.  Indeed, they acknowledge that diesel engines provide several advantages over gas engines, which they received.  *Id.* ¶¶ 13, 88, 89, 90.  Plaintiffs' failure to commit to a comparator, and quantify their alleged overpayment based on that comparator, renders their claim deficient even under the most lenient of standards.

---

[3]    Plaintiffs' claim that Rule 9(b) does not apply to fraud damages thus makes no difference.  Opp. 12.  As for *Ruiz v. Celsius Holdings, Inc.*, 2021 WL 5811264 (S.D. Cal. July 28, 2021), the court relied on an understanding of what is uniquely required to plead a deceptive business practice under the New York law.  *Id.* at *12.  Even on that question, *Ruiz* was mistaken. *See, e.g.*, *Naimi v. Starbucks Corp.*, 798 F. App'x 67, 70 (9th Cir. 2019) ("[t]he bare recitation of the word 'premium' does not adequately allege a cognizable injury" under the GBL).

*Third*, Plaintiffs stress the unremarkable point that unjust enrichment claims do not require "the money be paid directly to the recipient." Opp. 13. But Cummins never suggested otherwise. Instead, Cummins argued that Plaintiffs "fail[ed] to make any particularized allegations that the dealers passed on the benefit of the overpayment" to Cummins. Mot. 13. In other words, Plaintiffs failed to "establish a causal connection between the wrongful conduct and the profits to be disgorged." *Uzyel v. Kadisha*, 116 Cal. Rptr. 3d 244, 264 (Ct. App. 2010). Again, Plaintiffs' own authorities acknowledge that a causal relationship is required to state an unjust enrichment claim. *See, e.g.*, *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 671 (E.D. Mich. 2000) ("[T]he plaintiff must show that his detriment and the defendant's benefit are related and flow from the challenged conduct."); *Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659, 693 (E.D. Mich. 2020) (requiring "facts showing that [plaintiffs] bestowed some sort of benefit upon the defendant"); *Hirsch v. Bank of Am.*, 132 Cal. Rptr. 2d 220, 229 (Ct. App. 2003) (requiring unjust retention "at the expense of another"); *Cal. Fed. Bank v. Matreyek*, 10 Cal. Rptr. 2d 58, 62 (Ct. App. 1992) (requiring plaintiff "confer[] a benefit upon" defendant). Plaintiffs' failure to allege how the purportedly unjust benefit they conferred on independent car dealerships flowed to FCA, let alone to Cummins, provides an independent basis for dismissal.

## III. PLAINTIFFS LACK STANDING TO ASSERT NATIONWIDE-CLASS FRAUDULENT CONCEALMENT CLAIMS (COUNT II)

Plaintiffs lack standing to advance claims on behalf of non-California purchasers. Mot. 13-14. Plaintiffs concede that they are residents of California who purchased their vehicles in California and thus suffered any alleged fraudulent concealment injury under California law. Opp. 13. And yet Plaintiffs seek to bring claims on behalf of putative class members whose alleged injuries occurred under the common law of 49 other states.

Plaintiffs seek refuge in *Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015), which they call "binding authority" that requires this Court to defer the standing question until class certification. Opp. 2. But Plaintiffs ignore that this Court has already concluded otherwise, in a case Cummins cited and that Plaintiffs fail to address. *Soo v. Lorex Corp.*, 2020 WL 5408117, at *10 (N.D. Cal. Sept. 9, 2020) (Corley, J.) ("Plaintiffs' reliance on *Melendres*, 784 F.3d 1254,

8

does not persuade the Court."); *see also Hindsman v. Gen. Motors LLC*, 2018 WL 2463113, at *15-16 (N.D. Cal. June 1, 2018) (Corley, J.) (granting motion to dismiss putative nationwide class warranty claim where named plaintiffs all purchased vehicles in California). This Court's conclusion is not an outlier. *See* Mot. 14 (collecting six additional post-*Melendres* cases that have reached the same conclusion as this Court).[4]

In *Soo*, residents of California and New York bought a home security camera that became inoperative after the manufacturer made a change in its technology provider. They then brought a putative nationwide class action alleging violations of state consumer protection, false advertising, and business statutes as well as violations of state common law. On a motion to dismiss, this Court dismissed plaintiffs' nationwide claims for lack of standing because the plaintiffs failed to "explain how they have standing to pursue claims under other states' laws" and instead "merely object[ed] to the Court deciding the standing issue at this juncture." 2020 WL 5408117, at *10. The Court explained: "[w]hen to address this issue—at the pleadings stage or class certification—is one of discretion." *Id.* The Court then explicitly rejected plaintiffs' argument that *Melendres* mandated otherwise:

> Unlike the instant case, *Melendres* did not confront a situation where named plaintiffs brought claims under the laws of multiple states where they did not reside and where they were not injured: in *Melendres*, all plaintiffs alleged that they suffered the same constitutional injury, only in different factual circumstances. Here, because Plaintiffs bring claims under the laws of multiple states (some antitrust and some not), Plaintiffs technically invoke different legally protected interests.

*Id.* at 11 (quoting *Jones v. Micron Tech Inc.*, 400 F. Supp. 3d 897, 909 (N.D. Cal. 2019)).

Plaintiffs argue only that the Court is legally foreclosed from resolving this issue on motion to dismiss, not that the Court should exercise its discretion to postpone resolution, and

---

[4]     Plaintiffs' reliance on *Sidhu v. Bayer Healthcare Pharms., Inc.*, 2023 WL 6541865 (N.D. Cal. Oct. 5, 2023), is misplaced. The question in *Sidhu* was whether the plaintiffs had standing to bring claims under California law on behalf of putative class members outside of California, not whether plaintiffs could "assert claims under the laws of states outside of [California]." *Id.* at *6-7. Plaintiffs also cite two decisions that suggest *Melendres* sweeps more broadly. Opp. 14 (*citing Gatling-Lee v. Del Monte Foods, Inc.*, 2023 WL 11113888, at *5 (N.D. Cal. Mar. 28, 2023); *EcoDiesel*, 295 F. Supp. 3d  at 955). Those decisions have been rightly criticized. *See, e.g.*, *Jones v. Micron Technology Inc.*, 400 F. Supp. 3d 897, 909-910 (N.D. Cal. 2019).

thus have waived any such argument. Regardless, there is no reason for delay. It is "'plain enough from the pleadings'" that Plaintiffs have suffered no injury outside California. *Carpenter v. PetSmart*, 441 F. Supp. 3d 1028, 1039 (S.D. Cal. 2020). Allowing the case to nonetheless proceed would permit discovery under the laws of states "to which [Plaintiffs] have no connection," a "mere[] waste [of] time and money." *Soo*, 2020 WL 5408117, at *10.

Plaintiffs' failure to plead the state laws under which they purport to proceed also warrants dismissal. Mot. 15. The substantive law Plaintiffs cite in their complaint for this claim is the Restatement (Second) of Torts. Compl. ¶ 246. But that is plainly insufficient under Rule 12(b)(6). "'Even if the basic elements of [common law claims] are unlikely to differ much from state to state, there may be (and likely are) differences from state to state regarding issues such as applicable statute of limitations and various equitable defenses.'" *Augustine v. Talking Rain Beverage Co., Inc.*, 386 F. Supp. 3d 1317, 1333 (S.D. Cal. 2019). Because Plaintiffs "fail[ed] to identify which state laws govern their common law claims," the "[fraudulent concealment] claims brought on behalf of the nationwide class have not been adequately pled." *Id.*[5]

## IV. PLAINTIFFS' CONSUMER PROTECTION AND FRAUDULENT CONCEALMENT CLAIMS SHOULD BE DISMISSED IN PART (COUNTS II, III, IV, IX)

### A. Plaintiffs' Claims Should Be Dismissed To The Extent They Rely On Non-Actionable Puffery

Plaintiffs do not contest that Cummins's representations regarding their commitment to the environment are not actionable and thus Plaintiffs' claims should be dismissed to the extent they rely on these representations. Regarding Cummins's cleanliness and performance-related representations, Plaintiffs offer three meritless responses.

*First*, Plaintiffs claim that Cummins's representations regarding the cleanliness of its engines are actionable because they "were made in the context of assuring customers that [their]

---

[5] The cases on which Plaintiffs rely (Opp. 14-15) do not say otherwise. *Rigo Amavizca v. Nutra Mfg., LLC* is a class certification decision, not a motion to dismiss decision, and so it says nothing Plaintiffs' pleading burden. 2021 WL 682113 (C.D. Cal. Jan. 27, 2021). And, contrary to Plaintiffs' argument, *Plotts v. American Honda Motor Co., Inc.* itself recognized that "district courts retain discretion to address standing before or after class certification." 2023 WL 4843342, at *13 (C.D. Cal. June 9, 2023).

engines met federal and state regulations." Opp. 16. Plaintiffs find themselves between Scylla and Charybdis. If Cummins's representations regarding cleanliness are actionable solely because they assured consumers of Clean Air Act compliance, Plaintiffs' claims are plainly an attempt to enforce governmental emissions standards and are thus preempted. *See* Part IV.B, *infra*. If, on the other hand, Cummins's representations are actionable because they represented that their engines were "clean" as colloquially understood, Plaintiffs run straight into a wall of authority establishing that "clean" is a subjective term constituting non-actionable puffery. *See, e.g.*, *Treuhaft v. Mercedes-Benz USA, LLC*, 2021 WL 2864877, at *5 (C.D. Cal. July 6, 2021); *Raymo v. FCA US LLC*, 475 F. Supp. 3d 680, 706 (E.D. Mich. 2020); *Klein v. Ljubljana Inter Auto d.o.o.*, 2022 WL 16859589, at *4 (C.D. Cal. Aug. 2, 2022); *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 2021 WL 3371938, at *24-25 (S.D.N.Y. Aug. 3, 2021); *Gamboa v. Ford Motor Co.*, 381 F. Supp. 3d 853, 875 (E.D. Mich. 2019).

Instead of grappling with this case law, Plaintiffs invoke two distinguishable cases. In *EcoDiesel*, the court found the label "Ecodiesel" actionable. 295 F. Supp. 3d at 1006. But "Ecodiesel" is a far more specific label than "clean." The FTC accordingly lists "Eco-friendly" as a term "likely [to] convey that the product has far-reaching environmental benefits" to induce consumer reliance. 16 C.F.R. § 260.4. Unsurprisingly, the agency does not do the same for "clean." *See* 16 C.F.R. §§ 260.3-260.4. Likewise, in *VW Clean Diesel*, the court permitted reliance on the label "ultra low emissions" because it could be empirically verified by comparing the vehicles' emissions to the industry average. 349 F. Supp. 3d at 911. As court after court has recognized, the same is not true for claims that vehicles or engines are generally clean.

*Second*, Plaintiffs claim that Cummins's representations regarding the quality and performance of its engines are "actionable because those claims relate to specific functions and capabilities of the Class Trucks." Opp. 16-17. Plaintiffs again mischaracterize Cummins's argument, which targets several representations touting the quality and performance of its engines in embellished terms. *See* Compl. ¶ 171 ("World's best engine"); *id.* ("best-in-class torque"); *id.* ¶ 173 ("best-in-class capability"); *id.* ¶ 172a ("class-leading power and towing capacity"). Contrary to Plaintiffs' assertions, these representations neither "make[] a claim as

to the specific or absolute characteristics" of the engine nor relate to the functionality of the engines' SCR/DEF systems.  *Graham v. Cent. Garden & Pet Co.*, 2023 WL 2744391, at *3 (N.D. Cal. Mar. 30, 2023) (Corley, J.); *compare* Compl. ¶¶ 171-173, *with Graham*, 2023 WL 2744391, at *1 (labels stated product was "proven" to "reduce multi-cat conflict and destructive behavior," to provide "anxiety and stress relief," and to "reduce scratching" and "urine marking.").  None of these representations is "measurable by comparative research."  *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 7627 F. Supp. 2d 384, 464 (D.N.J. 2009).

*Third*, Plaintiffs suggest that, because Cummins's representations must be viewed in context, the court should consider them as a group.  Opp. 17.  Not so.  While courts must consider context, they nonetheless proceed representation-by-representation to determine whether each one is actionable under a theory of fraud.  *See, e.g.*, *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1086-1087 (N.D. Cal. 2017); *Treuhaft*, 2021 WL 2864877, at *5; *Klein*, 2022 WL 16859589, at *4; *Gold v. Lumber Liquidators, Inc.*, 2015 WL 7888906, at *6-7 (N.D. Cal. Nov. 30, 2015).  "Context" is thus not the cure-all that Plaintiffs make it out to be.

## B.    Federal Law Preempts Plaintiffs' Claims Based On Representations Of Regulatory Compliance

Plaintiffs do not challenge, and thus concede, that their state-law claims are premised in part on Cummins's alleged emissions compliance misrepresentations—namely, that the Class Trucks engines were "emissions compliant"; were certified to meet CARB standards; and were covered by valid COCs and EOs.  Mot. 18.  Cummins challenges Plaintiffs' reliance on these alleged emissions compliance misrepresentations because such theories of liability are attempts to enforce a "standard relat[ed] to the control of emissions" (42 U.S.C. § 7543(a)) and are thus preempted.  *See In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Pracs. Litig.*, 65 F.4th 851, 863 (6th Cir. 2023); *Fenner*, 113 F.4th at 593-603.  Plaintiffs marshal five arguments to save their emissions compliance theories from preemption, but none succeeds.

*First*, Plaintiffs argue in various ways that their emissions compliance allegations all concern purported misrepresentations Cummins made to consumers, not to regulators, and so are not preempted.  Opp. 20-21.  This is an artificial distinction that cannot be administered in

any principled way.  An application for a COC or an EO is a representation from a manufacturer to its regulator that a proposed vehicle will conform to the specifications presented.  The regulations establish that "failure to meet" the specifications of the application results in "any affected vehicles" being "not covered by the certificate."  40 C.F.R. § 86.1848-10(c).  Plaintiffs do not claim the vehicles lacked COCs or EOs.  Instead, Plaintiffs allege that the representations that FCA and Cummins made to regulators regarding how the Class Truck engines would operate in real-world conditions were false, invalidating the COCs and EOs under § 86.1848-10(c).  Compl. ¶ 8 ("Nor did Defendants disclose that, because *the disclosures to regulators were dishonest and inaccurate, the Class Trucks were not covered by valid [COCs] or [EOs] and were illegal to sell.*") (emphasis added)).  Thus any alleged "fraud on the consumer" in this case is wholly derivative of the alleged "fraud on the regulator" committed by Cummins.

The relevant question under the express language of the CAA is not whether the fraud is metaphysically "on the consumer" or "on the regulator," but whether the plaintiff's claim is an attempt to "enforce any standard relating to the control of emissions from new motor vehicles." 42 U.S.C. § 7543.  To answer that question, courts ask whether the plaintiff's claim "depend[s] entirely upon a CAA violation."  *Fenner*, 113 F.4th at 596.  If it does, it is an attempt to enforce the regulation and it is preempted.  *Id.*  In *Fenner*, the Sixth Circuit "appropriately held preempted those of plaintiffs' claims which *did* arise exclusively from alleged violations of federal regulations" and preserved only those claims which "did not rely on a showing of any regulatory violation."  *Fenner v. Gen. Motors, LLC*, 121 F.4th 1117, 1118 (6th Cir. 2024) (mem.) (Moore, J., concurring in denial of rehearing en banc) (emphasis original).  That is precisely what Cummins asks the Court to do here.

*Second*, Plaintiffs contend that certain decisions in this Circuit—namely *McClellan v. I-Flow Corp.*, 776 F.3d 1035 (9th Cir. 2015), *EcoDiesel*, and *VW Clean Diesel*—foreclose a preemption finding in this case.  But each of those decisions is distinguishable.  In *McClellan*, the plaintiff's theory of harm had "little to do with direct regulatory interaction with the FDA," which the court contrasted with *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 346-347 (2001), where the plaintiff "alleged that the defendant made fraudulent representations

*during* the market approval process[] *to the FDA*," 776 F.3d at 1041 (emphasis original). Plaintiffs allege the very same thing here, namely that Cummins made fraudulent misrepresentations during the approval process to its regulators. From *EcoDiesel*, Plaintiffs quote the court's conclusion that preemption did not apply where plaintiffs did not need to "prove any CAA violation in order to prove up their claims," 295 F. Supp. 3d at 1003, ignoring that Plaintiffs' emissions compliance misrepresentations in this case would require just that. And Plaintiffs wrongly accuse Cummins of mischaracterizing the court's conclusion in *VW Clean Diesel* (Opp. 22 n.17), when the case says exactly what Cummins said it does:

> [T]o prove that VW lied when it represented in advertising that its vehicles "me[t] the strictest EPA standards in the U.S.," Plaintiffs would need to prove the opposite—that the class vehicles did not meet EPA standards. If Plaintiffs proceed by basing their claims on statements like this one, their claims get closer to the line of "attempting to enforce" standards relating to the control of emissions from new motor vehicles.

349 F. Supp. 3d at 911 (citation omitted)

*Third*, Plaintiffs claim *Ford*, *Fenner*, and *City of Modesto Redevelopment Agency v. Dow Chemical Co.*, 2005 WL 1171988 (Cal. Super. Ct. Apr. 11, 2005), are distinguishable because none involved a regulatory determination "that a manufacturer committed fraud." Opp. 21-23. But preemption is not just a matter of "'lay[ing] down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties.'" *Amalgamated Ass'n of St., Elec. Ry. and Motor Coach Emps. v. Lockridge*, 403 U.S. 274, 287 (1971). It also involves "'confid[ing] primary interpretation and application of its rules to a specific and specially constituted tribunal.'" *Id.* Indeed, "'[c]onflict in technique can be fully as disruptive to the system Congress erected as conflict in overt policy.'" *Arizona v. United States*, 567 U.S. 387, 406 (2012). Plaintiffs cite no authority for their proposition that the CAA preempts attempts to enforce a "standard relat[ed] to the control of emissions" (42 U.S.C. § 7543(a)) only until the EPA reaches a determination, at which point private enforcement of those same regulatory violations becomes permissible.

*Fourth*, Plaintiffs call it "bizarre" that the CAA would preempt claims premised on compliance with CARB standards. Opp. 22. But it makes perfect sense. Under the CAA,

14

California is only permitted to regulate motor vehicle emissions with the express permission of the Environmental Protection Agency, and even then, only upon a finding that California's regulations are at least as stringent as the federal standards. 42 U.S.C. § 7543(b). The CAA's preemption provision demonstrates Congress's intent to entrust enforcement of emissions standards to the EPA and specifies the "limited circumstances in which [California] may do" the same. *Arizona*, 567 U.S. at 408; *see also* 42 U.S.C. § 7543(a)-(b). Thus, while the federal government has given CARB permission to enforce emissions standards, it has not extended that same grace to private litigants enforcing CARB's standards.

*Finally*, Plaintiffs invoke two unremarkable points of law: that Cummins carries the burden of proof of demonstrating preemption, and that there is a presumption against preemption in the field of false advertising because it is an area of traditional state concern. Opp. 18. Both points may be true, but these burdens are not insurmountable, as the case law that Plaintiffs cites makes clear. *Id.* (citing *Chae v. SLM Corp.*, 593 F.3d 936, 943-950 (affirming preemption of state contract and consumer protection claims, notwithstanding presumption against preemption)). For the reasons discussed, Cummins has overcome these burdens here.

## CONCLUSION

For the reasons stated, Cummins respectfully requests that the Court grants its motion to dismiss Counts I and XI in the Consolidated Amended Class Action Complaint with prejudice, dismiss claims in Count II on behalf of a nationwide class with prejudice, and dismiss Counts II, III, IV, and X to the extent they rely on theories of liability that are either premised on statements that constitute non-actionable puffery or are preempted.

1    Dated:  December 20, 2024                    By:      */s/ Joshua Lerner*
2                                                          Joshua Lerner

3                                                  Joshua H. Lerner (SBN 220755)
                                                   *joshua.lerner@wilmerhale.com*
4                                                  WILMER CUTLER PICKERING
                                                   HALE AND DORR LLP
5                                                  1 Front Street, Suite 3500
                                                   San Francisco, California 9411
6                                                  Tel: (628) 235-1124

7                                                  Ronald Machen (*pro hac vice*)
                                                   *ronald.machen@wilmerhale.com*
8                                                  WILMER CUTLER PICKERING
                                                   HALE AND DORR LLP
9                                                  2100 Pennsylvania Avenue NW
                                                   Washington, District of Columbia 20037
10                                                 Tel: (202) 663-6881

11                                                 Alan Schoenfeld (*pro hac vice*)
                                                   *alan.schoenfeld@wilmerhale.com*
12                                                 WILMER CUTLER PICKERING
                                                   HALE AND DORR LLP
13                                                 7 World Trade Center
                                                   250 Greenwich Street
14                                                 New York, New York 10007
                                                   Tel: (212) 937-7294
15                                                 *Attorneys for Defendant Cummins Inc.*
16
17
18
19
20
21
22
23
24
25
26
27
28