UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK BIEDERMAN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> FCA US LLC, et al., <br><br> Defendants. | Case No. 23-cv-06640-JSC <br><br> **ORDER RE PLAINTIFFS' MOTION FOR RECONSIDERATION AND MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL** <br><br> Re: Dkt. Nos. 102, 109 |

Plaintiffs purchased RAM 2500 and 3500 pickup trucks ("Class Trucks") installed with alleged "defeat devices" that affected the emissions and performance of their diesel engines. In this putative class action, Plaintiffs advanced 11 causes of action against Defendants FCA US LLC and Cummins Inc. Defendants then moved to dismiss the Consolidated Amended Class Action Complaint ("CAC") in its entirety, and on February 11, 2025, the Court issued an order granting in part and denying in part those motions. (Dkt. No. 95.)

Relevant to the instant motions, the Court granted Cummins' Rule 12(b)(6) motion to dismiss Plaintiffs' civil RICO claim, without leave to amend. (*See id*.) The Court based its ruling on *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), when the Supreme Court held indirect purchasers are barred from advancing claims under the Clayton Act. *See Biederman v. FCA US LLC*, No. 23-CV-06640-JSC, 2025 WL 458831, at *2 -*4 (N.D. Cal. Feb. 11, 2025). RICO's civil enforcement provision, 18 U.S.C. § 1964(c), is nearly identical to that of the Clayton Act, so this Court held *Illinois Brick* similarly bars civil RICO claims by indirect purchasers. *Id*. at *2. Since Plaintiffs purchased their vehicles from third-party dealerships, rather than from Defendants, the claim could not advance. *Id*.

Now pending before the Court are Plaintiffs' motion for reconsideration of the February 11

Order as well as their motion for certification of an interlocutory appeal under 28 U.S.C. § 1292(b). (Dkt. Nos. 102, 109.) Having carefully considered the parties' submissions, and with the benefit of oral argument on May 1, 2025, the Court DENIES the motion for reconsideration and GRANTS the motion for certification of an interlocutory appeal.

## DISCUSSION

### I.  MOTION FOR RECONSIDERATION

Civil Local Rule 7-9(b) provides that a party seeking leave to file a motion for reconsideration must show one of the following circumstances:

> (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or
>
> (2) The emergence of new material facts or a change of law occurring after the time of such order; or
>
> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Civil L. R. 7-9(b). The Local Rule cross-references Federal Rule of Civil Procedure 54(b), which states in relevant part:

> … any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). These rules reflect a court's inherent authority to reconsider interlocutory orders. *See City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 886 (9th Cir. 2001) ("A district court's power to rescind, reconsider, or modify an interlocutory order is derived from the common law, not from the Federal Rules of Civil Procedure."). Indeed, "[a]s long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind*,* or modify an interlocutory order for cause seen by it to be sufficient." *Id.* at 885 (quoting *Melancon v. Texaco, Inc.,* 659 F.2d 551, 553 (5th Cir.1981)). Here, Plaintiffs base their motion on Civil L.R. 7-9(b)(2), arguing the Supreme Court's recent

2

decision in *Med. Marijuana, Inc. v. Horn*, 145 S. Ct. 931 (2025), contravenes this Court's February 11, 2025 Order. (Dkt. No. 95.) The Court disagrees.

In *Horn*, the appellee was a commercial truck driver who had been injured in an accident. 145 S. Ct. at 936. For pain relief, he then purchased and used Medical Marijuana's CBD tincture product, which was advertised to contain 0% THC. *Id*. at 937. During a routine drug screening by his employer, Horn tested positive for THC and was subsequently fired. *Id*. He then sued under a civil RICO theory, alleging fraud by Medical Marijuana as to the THC content of its products. *Id*. at 937-38. The Court considered whether the civil RICO statute, 18 U.S.C. § 1964(c), permitted a cause of action for business and property losses derived from a personal injury—there, the trucking accident that prompted Horn to purchase the tincture. Holding Section 1964(c) permits such an action, the Court noted that antitrust precedent did not aid Medical Marijuana's position, and "the Clayton Act and § 1964(c) are not 'interchangeable.'" *Id*. at 943. Plaintiffs grasp at this language to argue *Illinois Brick* does not apply in the civil RICO context. (Dkt. No. 109 at 3.) The Court is unpersuaded.

Medical Marijuana argued antitrust law foreclosed recovery for certain economic harms, and therefore, civil RICO should be read the same. *Horn*, 145 S. Ct. at 942. But the Supreme Court observed that harm theory was already considered and rejected in *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 (1985), when the Court declined to import the concept of a "racketeering injury" into Section 1964(c). The Supreme Court's inquiry was specific: does antitrust precedent requiring an "injury of the type the antitrust laws were intended to prevent" suggest civil RICO prohibits claims of injury to business or property derived from a personal injury? *Horn*, 145 S. Ct. at 942. The Court answered no. But in holding *Illinois Brick* applies to civil RICO claims, this Court considered *Sedima* and determined it did not control the analysis here. *See Biederman v. FCA US LLC*, No. 23-CV-06640-JSC, 2025 WL 458831, at *3 (N.D. Cal. Feb. 11, 2025) ("Plaintiffs read *Sedima* to establish a presumption against applying principles from the antitrust context to RICO. But this reading fails to account for the later-decided *Holmes*, which emphasized the identical language in both the Clayton Act and 18 U.S.C. § 1964(c) as well as limited *Sedima* to the issue decided there."). So, the Court interprets *Horn* as saying no more than

the *Sedima* precedent the Court already considered.

Plaintiffs also argue *Illinois Brick* should not apply to Section 1964(c) because that case was decided seven years after enactment of the civil RICO provision. (Dkt. No. 109 at 3.) So, they reason, if the *Horn* Court rejected application of antitrust principles that pre-dated civil RICO, then *Illinois Brick* surely cannot apply since it post-dates the provision. Again, the Court is not persuaded. The *Illinois Brick* rule is about judicial economy and considers "the risk of duplicate recoveries on the one hand, or the danger of complex apportionment of damages on the other." *Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 544 (1983). As the Supreme Court observed, these case management concerns originated in the congressional debates about the Sherman Act—legislative history that surely was available when Congress enacted Section 1964(c). *See id*. at 543 n.50. Indeed, in *Associated General Contractors*, the Supreme Court pointed to the decision in *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481 (1968), as similarly grounded in such concerns. *Id*. at 544. *Hanover Shoe* was itself decided prior to 1970—the year Section 1964(c) was enacted. So, the fact that *Illinois Brick* was decided after Section 1964(c)'s enactment does not mean the judicial economy concerns underlying that decision were not available to Congress in 1970. Ultimately, *Horn* does not address any of these concerns; nor should it, because it is a different case about a different issue. So, *Horn* does not suffice as a basis for reconsideration.

Accordingly, the Court DENIES Plaintiffs' motion for reconsideration.

## II.    MOTION FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)

Pursuant to 28 U.S.C. § 1292(b), Plaintiffs request the Court certify an interlocutory appeal of the February 11 Order, specifically as to whether *Illinois Brick* applies to claims brought under 18 U.S.C. § 1964(c). (Dkt. No. 102.) A court may certify such an appeal when an order: (1) "involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) if "an immediate appeal from the order may materially advance the ultimate termination of the litigation . . . ." 28 U.S.C. § 1292(b). An interlocutory appeal is a "departure from the basic policy of postponing appellate review until after the entry of a final judgment," and as such requires "exceptional circumstances." *ICTSI Oregon, Inc. v. Int'l Longshore &*

*Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022). "As to the timing of certification, the district court may certify the order for interlocutory appeal in the text of that order or in a separate order, known as the certification order." *Id.* at 1131 (citation omitted). The Court proceeds by the latter approach and now addresses each of Section 1292(b)'s three prongs.

### A. Controlling Question of Law

Under the first prong, Plaintiffs must establish the February 11 Order presents "[a] controlling question of law" and not a question of fact. *ICTSI Oregon, Inc*., 22 F.4th at 1130. Moreover, a "controlling question of law" need not terminate the litigation should the district court order be reversed. *See In re Cement Antitrust Litig.* (MDL No. 296), 673 F.2d 1020, 1026 (9th Cir. 1981) (subsequent history omitted). Rather, "all that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *Id*. The parties do not dispute the Order presents a pure question of law regarding the applicability of *Illinois Brick* to 18 U.S.C. § 1964(c). Instead, they disagree as to whether that question is "controlling" in this litigation. The Court concludes that it is.

The February 11 Order granted Cummins' motion to dismiss the civil RICO claim—the *only* claim providing a basis for a nationwide class. Absent the federal claim, the putative nationwide class narrowed to a single-state class for the remaining claims. A reversal by the Ninth Circuit would potentially expand this case from a one-state class to a fifty-state class as well as introduce the possibility of treble damages. These potential changes to the scope of the litigation and remedy available to Plaintiffs could drastically reshape subsequent proceedings, including class certification and trial. So, the Ninth Circuit's resolution of this question could materially affect the outcome of this litigation.

Cummins insists resolution of this issue would not "materially affect the outcome of litigation" because an appeal of the Court's civil RICO ruling would not affect Plaintiffs' remaining six causes of action. (Dkt. No. 104 at 15.) This argument fails to persuade as the cases upon which Cummins relies are readily distinguishable. In *Friedman v. 24 Hour Fitness USA, Inc.*, No. CV 06-6282 AHM CTX, 2009 WL 545783 (C.D. Cal. Mar. 3, 2009), the defendant sought interlocutory appeal of an order denying a motion to dismiss the plaintiff's civil RICO

1  claim. 2009 WL 545783, at *1.  The court reasoned that even if the defendant prevailed on

2  appeal, and the civil RICO claim were dismissed, that would not materially affect the litigation

3  since there were state law claims—and proposed classes—that would "reach as far back in time as

4  would the federal class if the RICO claim remained." *Id*.  So, the *Friedman* court did not need to

5  consider the potential consequence of greatly expanding the class, since there were state law

6  claims that overlapped significantly with the federal claim. *See id*. (noting overlap such that "[t]he

7  Court previously suggested to the parties that the state law claims need not be litigated if a federal

8  class were certified and the federal claims survived summary judgment").

9          In *Johnson v. Serenity Transportation, Inc*., No. 15-CV-02004-JSC, 2017 WL 3168491

10  (N.D. Cal. July 26, 2027), this Court previously considered a motion for interlocutory appeal

11  following denial of the defendants' motion for summary judgment. 2017 WL 3168491, at *1.

12  There, the Court determined the first prong of Section 1292(b) had not been met because

13  defendants sought appeal of a mixed question of law and fact. *Id*.  That is not the case here.

14  Cummins also relies on *Johnson* to argue the remaining state law claims subject to litigation

15  preclude interlocutory appeal. (Dkt. No. 104 at 15.) But in *Johnson*, the defendants' only reason

16  for why an appeal would "materially affect the outcome" was that it would streamline the claims

17  for trial. *Id*. at *2.  As the Court noted, that argument would apply to *every* order on a motion for

18  summary judgment and did not establish the "exceptional situation[]" required for interlocutory

19  review. *Id*.

20          Consequently, the Court determines the February 11 Order implicates a "controlling

21  question of law."

22          **B.    Substantial Ground for Difference of Opinion**

23          Next, "[t]o determine if a 'substantial ground for difference of opinion' exists under

24  § 1292(b), courts must examine to what extent the controlling law is unclear. Courts traditionally

25  will find that a substantial ground for difference of opinion exists where 'the circuits are in dispute

26  on the question and the court of appeals of the circuit has not spoken on the point, if complicated

27  questions arise under foreign law, or if novel and difficult questions of first impression are

28  presented.'" *Couch v. Telescope Inc*., 611 F.3d 629, 633 (9th Cir. 2010). That said, "[a]

1  substantial ground for difference of opinion exists where reasonable jurists might disagree on an
2  issue's resolution, not merely where they have already disagreed." *Reese v. BP Expl. (Alaska)*
3  *Inc.*, 643 F.3d 681, 688 (9th Cir. 2011).  Here, the Court recognizes substantial ground exists for a
4  difference of opinion as to whether *Illinois Brick* applies to Section 1964(c).

5        In the February 11 Order, the Court observed that the Ninth Circuit had not directly
6  addressed this issue.  *See Biederman*, 2025 WL 458831, at *2.  Looking outside the circuit, the
7  Court noted "every federal court of appeals to have considered whether *Illinois Brick* applies to
8  civil RICO has held that it does."  *Id*.  Though the circuit courts have been unanimous, they were
9  not without equivocation.  For instance, in *Fenner v. Gen. Motors*, LLC, the Sixth Circuit held
10 *Illinois Brick* barred an indirect purchaser from asserting a civil RICO claim based on passed-
11 through overcharges.  113 F.4th 585, 604 (6th Cir. 2024).  But, the court also expressed concern
12 regarding the ruling:

> We would be remiss not to note the consequences of such a bright-line rule that mixes law and economics but does not necessarily reflect economic reality today. Under this rule, major manufacturers can insulate themselves from all antitrust and RICO liability, simply by selling their products through intermediaries. Because the business and success of intermediary car dealerships is dependent on car manufacturers, for example, consumers cannot rely on the intermediary car dealerships to vindicate their interests.

18 *See id*. at 605 n.6.  And the Fourth Circuit more recently observed that "this is a complicated
19 question on which courts have taken diverging views."  *MSP Recovery Claims, Series LLC v.*
20 *Lundbeck LLC*, 130 F.4th 91, 111 n.11 (4th Cir. 2025) (collecting cases).  Even though the court
21 did not ultimately reach the question, it recognized "varying degrees of hesitancy" among the
22 courts to consider whether *Illinois Brick* applies to Section 1964(c) and cited to opinions going
23 both ways.[1]  *Id*.  While this Court ultimately concluded the *Illinois Brick* indirect-purchaser rule
24 applies to civil RICO, reasonable jurists might disagree on the issue's resolution.
25       Cummins' counterargument relies on the unanimity among federal circuit courts that have

---

[1] In support of their motion, Plaintiffs cite to district court cases holding *Illinois Brick* does not apply in the civil RICO context.  (Dkt. No. 106 at 8-9.)  These cases were included in the Fourth Circuit's discussion of the issue, and so the Court does not re-address them here.

7

confronted this question. There is no substantive ground for disagreement, it argues, because no one has disagreed. Though Cummins correctly observes this unanimity, it does not preclude interlocutory appeal. As the Court noted above, there does not need to be a circuit split, or clear disagreement already crystallized among the courts to warrant interlocutory review. "Stated another way, when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent." *Reese*, 643 F.3d at 688. But even so, despite the consistency among the circuit courts, Plaintiffs have highlighted at least some disagreement among the district courts. *See Lundbeck LLC*, 130 F.4th at 111 n.11 (identifying cases). Such circumstances satisfy the second prong of Section 1292(b).

For these reasons, the Court finds the February 11 Order presents a controlling question of law as to which substantial ground for difference of opinion exists.

### C. Materially Advances the Ultimate Termination of Litigation

The final prong under Section 1292(b) requires that an appeal "may materially advance the ultimate termination of the litigation." "[T]he 'materially advance' prong is satisfied when the resolution of the question 'may appreciably shorten the time, effort, or expense of conducting' the district court proceedings." *ICTSI Oregon, Inc.*, 22 F.4th at 1131 (quoting *In re Cement*, 673 F.2d at 1027). Moreover, "neither § 1292(b)'s literal text nor controlling precedent requires that the interlocutory appeal have a final, dispositive effect on the litigation, only that it 'may materially advance' the litigation." *Reese*, 643 F.3d at 688. Some district courts analyze this prong in conjunction with the first prong. *See, e.g.*, *Lovett v. Omni Hotels Mgmt. Corp.*, No. 14-CV-02844-RS, 2016 WL 7732622, at *3 (N.D. Cal. Apr. 18, 2016). And this makes sense, considering both prongs look to the materiality of the interlocutory appeal's impact on the case. *Compare In re Cement Antitrust Litig.* (MDL No. 296), 673 F.2d at 1026 ("[A]ll that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court.") *with Reese*, 643 F.3d at 688 (holding the third prong only requires the interlocutory appeal "'may materially advance' the litigation"). For the reasons stated in the Court's analysis in Part II.A., *supra*, the Court finds an interlocutory appeal "may

materially advance" this litigation.

Additionally, the appeal "may materially advance" the litigation by circumventing the need for a new trial in the event of reversal. If the Ninth Circuit reversed this Court following a final judgment, on remand the case might require certification of a new nationwide class. Further, reversal would likely require a new trial of the civil RICO claim because its elements differ from the current state law claims. However, since the civil RICO claim is based on the same facts as the state law claims, the most efficient course would be to adjudicate them together. An additional trial would require significant time, effort, and expense beyond those already invested in reaching a final judgment on the state law claims. Indeed, the Court is not alone in recognizing this case management concern as support for the "materially advance" prong. *See, e.g., Elorreaga v. Rockwell Automation, Inc*., No. 21-CV-05696-HSG, 2023 WL 4116623, at *2 (N.D. Cal. June 16, 2023) ("Accordingly, if the Ninth Circuit later finds that the government contractor defense is available in this context, the Court and the parties may have to re-try this case. An interlocutory appeal would thus 'materially advance' this litigation by eliminating a potentially substantial and needless waste of Court and party resources."). Here too, an interlocutory appeal would conserve judicial resources, conserve party resources, and simplify case management.

Cummins raises additional counterarguments with respect to this prong; none persuades the Court. First, Cummins argues the appeal would not materially advance the case because even if the Ninth Circuit reversed the February 11 Order, there are potential alternate grounds for dismissal of the civil RICO claim. (Dkt. No. 104 at 15-16.) The Court did not reach those arguments as to whether Plaintiffs plausibly alleged a RICO enterprise and offers no opinion on their merit. In the event the Ninth Circuit takes up the appeal and reverses, the Court can consider those arguments then. But ultimately, all this conjecture is beside the point since Section 1292(b) only requires that the interlocutory appeal "*may* materially advance" the litigation. 28 U.S.C. § 1292(b) (emphasis added). It very well may do so here.

Second, Cummins argues it is "conjectural" to suggest reversal by the Ninth Circuit following a final judgment in this case would require a retrial for the civil RICO claim. (Dkt. No. 104 at 18.) If Cummins wishes to rely on this argument, then it should stipulate to the preclusive

effect of a verdict on the state law claims for the elements of the civil RICO claim. But the Court finds it difficult to imagine Cummins taking such a position—an indicator of the argument's faults. Though the fraudulent scheme alleged by Plaintiffs is common to all their claims, the elements of those claims differ. Further, as the Court noted previously, the federal civil RICO claim implicates a nationwide class as opposed to the one-state class for the currently viable claims. A reversal would likely require additional class discovery and certification, all of which Cummins would surely wish to challenge.

And so, the Court determines an interlocutory appeal of the February 11 Order may materially advance this litigation.

* * *

Therefore, the Court finds the February 11 Order meets the three requirements for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

## CONCLUSION

For the reasons stated above, the Court DENIES the motion for reconsideration of the February 11, 2025 Order granting in part and denying in part Defendants' motions to dismiss. (Dkt. No. 109.) Further, the Court GRANTS the motion to certify an interlocutory appeal under 28 U.S.C. § 1292(b). (Dkt. No. 102.) In addition, the Court sets the next case management conference for June 11, 2025, at 2:00 p.m. via Zoom videoconference. A joint case management conference statement shall be filed no later than June 4, 2025.

This Order disposes of Docket Nos. 102, 109.

**IT IS SO ORDERED.**

Dated: May 1, 2025

JACQUELINE SCOTT CORLEY
United States District Judge

10